Horace Melvin PRUITT, Appellant,

v.

The STATE of Texas, Appellee.

No. 37783.

Court of Criminal Appeals of Texas.

Feb. 24, 1965.

Rehearing Denied April 28, 1965.

Bill D. Wood, Tyler, Milton Greer Mell, Gilmer, for appellant.

Leon B. Douglas, State's Atty., Austin, W. E. Coats, Jr., Dist. Atty., Hunter W. Brush, Asst. Dist. Atty., Tyler, for the State.

McDONALD, Presiding Judge.

The offense is unlawfully transporting intoxicating liquor, wine, in a dry area; the punishment, a fine of $500.00.

The state's evidence, adduced largely from testimony of a highway patrolman of the Texas Department of Public Safety, reflects that the patrolman stopped appellant on a country road, at about 10:00 P.M., purportedly to check his driver's license. While he had appellant stopped he flashed his flashlight into the car and "saw a top of a case of—or the top portion of a box which was a case of wine. I didn't know it was a case of wine at the time but there was a box in there which usually contained wine and it was marked as such." The patrolman then stated that he asked the driver to step back of the car and "at that time I investigated the carton to see if it contained any type of alcoholic beverage" and after said examination he continued: "I found a full case of wine, contained in the carton". This state's witness had earlier testified that appellant had been stopped by him for the purpose of a driver's license check; that appellant had showed him a

valid driver's license and that completed his check. The patrolman further related that he had no prior information that appellant was transporting liquor; that he had no warrant for his arrest; that appellant was not violating the law, nor did he have any information that appellant was violating the law for the purpose of checking to determine whether he had a valid operator's or other "driver's license". The officer testified that it was "dark; so whatever I saw, I saw with the light". "I didn't see it until I shined the light on it." In response to the question: "It was not visible while you were checking the driver's license, was it?", the officer responded: "If it was visible, I didn't see it." The patrolman further testified that the case of wine was revealed to his sight in the light. of the flashlight and that it was unnecessary for him to have flashed his flashlight into the back of appellant's car in order to check whether or not appellant had a driver's license. Appellant's counsel then asked the patrolman upon cross-examination: "Your purpose in making a search of the car was trying to get evidence of law violations, wasn't it?" The witness replied: "It was to get further evidence if there was any." Then followed this question: "That was your purpose in looking then. Let's change the phraseology. Your purpose in looking in the car was to get evidence of law violations, wasn't it?" The answer was: "I would say to determine if there were any." Then, this question: "Was that not your purpose in stopping him in the first place?" The patrolman responded: *"As a matter of fact, it was."*

Appellant's counsel contends that the patrolman had no right to stop appellant for a driver's license check but that if he did have the right to stop him for this purpose, that the resulting search was illegal and that the trial court erred in admitting evidence pertaining thereto and the fruits thereof.

From the testimony adduced in this case, it is clear to us that the appellant was stopped by the patrolman so that the patrolman *might get evidence of a law violation.* Assuming however, that the patrolman did stop appellant to check his driver's license, then the patrolman had no right to make a search as an incident to this stopping, under the circumstances of this case. Had he seen the wine visible to his naked eye, lying on the front seat of the automobile, then the evidence would have been admissible for it would have been secured without the need for a search. The officer would have been witnessing a violation of the law in his presence, just the same as though appellant had a pistol lying on the seat in plain view. We think, however, that the search actually started when the officer shined or flashed the flashlight in the back of the car. The examination of a licensee's driver's license does not carry with it the right to search the vehicle. A licensee is not under arrest during this examination period. It is only when he is without a valid license in his possession that he becomes a law-violator. Here, the appellant had in his possession and presented to the officer a valid, unexpired driver's license. This finding terminated the patrolman's responsibility in this matter. His further acts of making the search, and the action of the trial court in admitting, over appellant's objection, testimony as to the search and the fruits thereof contravene Article 727a, Vernon's Ann. C.C.P., and other constitutional and statutory provisions.

Tennessee has a statute similar to our own Art. 6687b, Section 13, Vernon's Ann. Civ.St., which has been construed in several cases by the Supreme Court of that State, in which they have been confronted with searches similar to that in the instant case. That Court has held such searches to be unauthorized under their statute. In Cox v. State, 181 Tenn. 344, 181 S.W.2d 338, 154 A.L.R. 809, their Supreme Court held in a case similar to the one at bar that the arrest was a mere subterfuge. That Court also announced similar holdings in Robertson v. State, 184 Tenn. 277, 198 S.W.

2d 633, and in Murphy v. State, 194 Tenn. 698, 254 S.W.2d 979. We adhere to these pronouncements and adopt them as our views in the disposition of this case.

Our disposition of this case makes it unnecessary for us to here pass upon the question of the authority of any peace officer to stop a motorist for the purpose of determining whether or not he is in possession of a valid driver's license. We shall pass upon that question when it is squarely before us.

The facts in Lee v. State, 164 Tex.Cr. R. 106, 296 S.W.2d 782, place that case in a different category from the case at bar. The record in Lee's case reflects that "it was not dark enough for the defendant to have his car lights on, this happened in the afternoon, but was still light enough to drive his car safely without the necessity of lights." The officer saw the carton of beer in the trunk of the defendant's car. "There was a bale of alfalfa hay in there, and the trunk lid was tied down but was not closed because this hay was standing on edge. I could see the beer carton from where I was standing." While Lee's case was decided upon the basic premise that consent was given for the search, it is clear to us that the officer observed a violation of the law in his presence; that is, he saw the beer, he did not need to make a search to discover it. In the case at bar the officer used a flashlight. It was ten o'clock at night.

For the reasons stated, the judgment is reversed and the cause is remanded.

### ON STATE'S MOTION FOR REHEARING

Rehearing overruled.

WOODLEY, Judge (dissenting).

The Tennessee cases referred to in the majority opinion hold that the statute of that state requiring that a motorist shall exhibit his driver's license upon demand of any state highway patrolman empowers patrolmen *at any time* to stop an automobile and require the driver to exhibit such license, but that such officers must exercise such right in good faith and not as a pretext for inspection of or prying into contents of a motor vehicle or any other possession of a citizen. (The Tennessee Statute differs from Art. 6687b (13) V.A.C.S. in that only a Tennessee State Highway Patrolman may require a motorist to exhibit his license.)

I do not find in the record support for holding that the authority of the patrolmen ceased at nightfall or that the shining of the light into the back of the car was a search or that the stopping of the car and flashing of the light was a mere subterfuge or excuse for failure to secure a search warrant or that the patrolmen were primarily actuated by a desire to detect a violation of the local option liquor law.

Patrolman Praytor testified that when he first saw appellant " * * * he was on an oiled road in Smith County; anyway my partner and I were on routine patrol and met him. He was driving more or less in the middle of the oiled country road."

He further testified in the absence of the jury:

"Q. Will you state whether or not it is a part of your responsibilities as a highway patrolman to check driver's licenses?

"A. Yes, it is.

"Q. Will you state if it is a matter of your routine, periodically, to stop vehicles for the purpose of checking driver's licenses?

"A. Yes, sir; one of the requirements of our job.

"Q. State whether or not you were so engaged on February 15, 1964?

"A. Yes, sir, I was.

"Q. State if that was the reason for which you stopped this Defendant?

·"A. Yes, it was."

I respectfully dissent.