**Berlin Pickett NELSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 48293.**

Court of Criminal Appeals of Texas.

May 15, 1974.

Gary Conrad, Kerry P. Fitzgerald, Dallas (Court-appointed), for appellant.

Henry Wade, Dist. Atty., Mardell Templeton, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

The conviction by a jury on a plea of not guilty was for robbery; the punishment, twenty (20) years.

On December 22, 1971, Ted Crow returned to his place of business from an outside call about 5:20 P.M. Upon entering his office, there was a black man crouched behind one of the desks, who claimed to be cleaning. This was appellant. Crow knew this was not true and ordered the man to leave. Another black man then came from the warehouse, who likewise was not supposed to be there. The two men scuffled with Crow and tied him up. The lighting was good and Crow observed appellant well, and positively identified him at the trial as one of the robbers. They took $57 or $58 in cash from Crow, and also took company checks, Crow's billfold, credit cards, blood type cards, hunting license, etc. After warning Crow that if he turned them in they would kill his wife and kids, the robbers left Crow still tied up.

About 10:15 the night of the robbery, Dallas Policemen Wimer and Peterson searched the automobile in which appellant and two other black men were riding, and found Crow's property therein. Appellant testified and denied that he was one of the robbers.

The first contention of appellant is that there was a fatal variance between the indictment and the proof, because he says the proof showed that the robbery occurred subsequent to the return of the indictment.

The indictment returned on January 17, 1972, alleged that appellant robbed Ted Crow "on or about December 22, 1971." The charge of the court used that date. The trial was held on October 2,

1972. The contention of a variance arises from the fact that in questioning the alleged victim of the robbery, Ted Crow, the prosecutor directed his attention in describing the robbery to "the 22nd of December, 1972, just past." The State says the use of the year 1972 instead of 1971 was a "slip of the lip." This is apparent since the trial was on October 2, 1972, which was before December 22, 1972, and could not be "just past." At that time the December 22 "just past" was December 22, 1971. Further, Officers Henderson and Wimer in detailing the search of the automobile where Ted Crow's property was found the night of the robbery fixed the date at December 22, 1971. Also, when appellant testified, he fixed the date of the search as December 22, 1971. We agree with the State that the use of 1972 instead of 1971 in the question asked Crow was a "slip of the lip," and overrule ground of error number one.

Next, appellant contends that the search of the automobile was illegal and in violation of his constitutional rights, and that Crow's property found in the automobile was improperly received in evidence.

The court held a hearing outside the presence of the jury and overruled appellant's motion to suppress.

The facts relating to the arrest, search and seizure are as follows:

Officer P. O. Wimer, while on routine patrol at about 10:15 P.M., December 22, 1971, saw a man get into an automobile at a parking lot and then saw the automobile proceed into the street without stopping or signalling. The automobile entered the traffic without the use of its lights. At this time, the automobile was occupied by the driver, the appellant who was in the right front seat and a third man in the back seat.

Officer Wimer testified that the shopping center adjacent to the parking lot was comprised of a liquor store, a Stop and Go store, a pool hall and a lounge. He had made several narcotic arrests at the parking lot on prior occasions; and, in his opinion, the parking lot was "known as a spot where you can score or buy narcotics."

Officer Wimer stated that the automobile in question did not pull off onto the street at a high rate of speed.

The officer and his partner proceeded to stop the automobile on account of the two traffic law violations, whereupon Officer Wimer's partner walked to the driver's side and Wimer walked to the passenger side. When appellant opened the passenger door to look out, Officer Wimer told him to get out so he could search him for weapons.

After appellant opened the door, the officer noticed "a strong smell of alcoholic beverage." A search of appellant showed that he had no weapons on his person. Officer Wimer then either pulled up appellant's sleeves or took off his coat and saw needle marks on both arms, which, in the officer's opinion, showed appellant was a narcotic user.

The officer then got the third man out of the back seat, pat searched him and then took appellant and the third man to the rear of the automobile where he talked to both of them. At this time, Officer Wimer's partner was standing with the driver (presumably by the driver's side of the automobile). Officer Wimer walked back to look in the automobile, at which time the third man "run down the street" and was never apprehended.

Officer Wimer returned to appellant and handcuffed him.

Officer Wimer further testified that appellant had been drinking and perhaps using narcotics.

Officer Wimer testified that he took a look inside the automobile because he "(w)anted to see how much wine was in the car and see why that man ran off and left, see if there was a gun in there or something else in the car. Lots of times

when we stop somebody and they will run, leave the car and there will be a television sitting in the back seat."

Officer Wimer found one or more of the company checks on the back seat and large, regular grocery sacks on the floor in the back seat and ". . . the wallet and either the check stubs and one check or the other checks were in the grocery sack and the others were on the back seat" in plain view. The wallet contained the driver's license and credit cards and other cards belonging to Crow.

Officer Wimer further testified that when the police stopped the automobile initially it was done so because "that man that was driving the car was driving without lights." Being asked, "What were you looking for then?" when he looked in the back seat of the car, Officer Wimer testified:

"A    Wanted to see how much wine was in the car and see why that man ran off and left, see if there was a gun in there or something else in the car. Lot of times when we stop somebody and they will run, leave the car and there will be a television sitting in the back seat.

"Q    What did you see in the back seat of the car?

"A    I found three pieces of paper. I think one of them—I take that back. I found some of these checks here. I don't recall whether I found the scraps—I think it was this that I found, but I can't be sure. It was one or the other of them was in this sack. I don't recall whether this was laying in the seat in the back seat or whether that was, Your Honor.

"Q    Okay.

"THE COURT: Anyway, you found all of the stuff that's now in that sack in the car?

"THE WITNESS: Yes, sir, we found, like I say, I don't recall which place I found what, but there were some grocery sacks in the car. Somebody in the car had recently bought groceries and this was either in the seat or this was and the other was in one of the grocery sacks along with a billfold."

■ The officers were justified in stopping the vehicle for the traffic violations. Art. 14.01, Sec. (b), Vernon's Ann.C.C.P., provides that an officer may arrest for an offense committed within his presence. Lewis v. State, Tex.Cr.App., 502 S.W.2d 699.

■ When one of the occupants ran away and some of the stolen checks and the sacks were in plain view, under all the circumstances of this case, further search was justified and the fruits thereof were admissible in evidence. Kay v. State, Tex.Cr.App., 489 S.W.2d 861; Buntion v. State, Tex.Cr.App., 476 S.W.2d 317; Black v. State, Tex.Cr.App., 491 S.W.2d 428; Onofre v. State, Tex.Cr.App., 474 S.W.2d 699.

■ Additionally, when appellant testified in his own behalf before the jury, he related that the officers searched the automobile and found the stolen property. By so doing he waived his objection to the legality of the search. Bradley v. State, Tex.Cr.App., 478 S.W.2d 527; Williams v. State, Tex.Cr.App., 479 S.W.2d 301. See Nicholas v. State, Tex.Cr.App., 502 S.W.2d 169.

We overrule ground of error number three.

The judgment is affirmed.

Opinion approved by the Court.