**Lawson HOWARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61438.**

Court of Criminal Appeals of Texas, Panel No. 2.

Sept. 26, 1979.

Rehearing Denied June 11, 1980.

Donna C. Pendergast and Philip S. Greene, Houston, for appellant.

Carol S. Vance, Dist. Atty., Raymond E. Fuchs and George H. Godwin, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Alfred Walker, Asst. State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal taken from an order revoking probation and assessing punishment by confinement for a term of four years in the Texas Department of Corrections. Regularity of the original and revocation proceedings are not questioned.

The record reflects that on February 7, 1977, appellant pleaded guilty to the charge of delivery of a controlled substance for which punishment was assessed at impris-

onment in the Texas Department of Corrections for four years. Imposition of the sentence, however, was suspended and appellant placed on probation under the usual conditions, one of which was that he commit no offense against the laws of the State of Texas or of any other state or of the United States. On June 22, 1978, the State filed an amended motion to revoke probation alleging a violation of that condition of probation in that on or about May 31, 1978, appellant knowingly possessed a controlled substance. Hearing on the motion was seasonably held with the consequential sentence of confinement for a term of four years.

In his first ground of error, the appellant contends that the trial court erred in admitting into evidence, over his timely objection, fruits of an illegal search and seizure. Because we believe that the instant seizure cannot be validated on the strength of the facts before us, we reverse the judgment of the trial court revoking appellant's probation.

While on routine patrol in Houston's Fifth Ward on the evening of May 31, 1978, Officers R. W. Holland and M. R. Harrison observed the appellant make a left turn without giving the proper turn signal. After noticing the minor traffic offense, the officers turned on their unit's red lights and pulled the appellant over to the side of the road. As the vehicles were slowing to a stop, Officer Holland noticed the appellant "dip down in his seat towards the steering wheel."[1] The officers exited their unit and approached the driver's side of appellant's vehicle just as the appellant was leaving it. As Officer Harrison escorted the appellant to the back of the latter's vehicle, Officer Holland shined his flashlight into the appellant's vehicle and noticed a brown plastic medicine jar containing a large amount of tablets on the floorboard, right in front of

---

1. Officer Harrison, the driver of the patrol unit, testified that as the vehicles were slowing to a halt, *he* noticed the appellant "*make some sort of bending action.*" We note that in addition to this seemingly contradictory testimony regarding the appellant's purported "furtive gesture," that the officers' offense report contained no mention of this or any other movement on appellant's part. (All emphasis is supplied throughout by the writer unless indicated otherwise.)

the driver's seat.[2] Officer Holland retrieved the jar, noted that there were no markings of any sort on the outside of the container, and proceeded to open it. The contents of the container were pinkish tablets bearing the inscription "BI 62." Officer Holland testified that he formed the opinion that the tablets were a controlled substance, namely Preludin, and, after informing his partner of this, formally placed appellant under arrest for possession of a controlled substance. Detaining the appellant in the back of his patrol unit, Officer Holland conducted a field inventory of appellant's vehicle and discovered a second container of what he also believed to be Preludin directly underneath the driver's seat of appellant's vehicle. The officers then transported the appellant to the central police station where he was subsequently processed and detained.

Houston Police Department chemist Charlotte Huffman testified that she ran a chemical analysis on the tablets taken from appellant's vehicle by Officers Holland and Harrison. The results of that analysis revealed that the 200 tablets at issue were phenmetrazine hydrochloride, a controlled substance commonly known as Preludin. Ms. Huffman also testified, on cross-examination, that it would be impossible to determine the content of the seized tablets with any degree of certainty merely by looking at them.

Testifying in his own behalf, the appellant stated that on the night in question, he had borrowed a friend's automobile in order to run an errand for his friend.[3] The appellant testified that the officers, upon stopping his vehicle, stated that "this was a routine check," and that he was not issued a citation for his allegedly improper left turn until he reached the police station. The appellant stated that upon questioning from the officers, he produced a valid Texas driver's license and told the officers that the vehicle he was driving was borrowed from a friend. The appellant estimated that he had been driving the borrowed vehicle for no more than three or four minutes and had neither seen the tablets seized nor knew of their contents.[4]

In rebuttal and for the limited purpose of impeachment, Officer Holland testified, over the appellant's objection, that the appellant made an oral incriminatory statement while in custody. According to Officer Holland, the appellant answered, "No, I'm not selling them [the pills]. They're all for me,[5]" when asked if he were.

The trial court then revoked appellant's probation on the grounds that the appellant committed the felony offense of possession of a controlled substance.

■ That the officers herein had sufficient probable cause to authorize the initial stop of appellant's vehicle is without question, given the appellant's failure to give a proper left turn signal as required by Vernon's Ann.Civ.St.Art. 6701d, § 68(a).[6] *Beck*

---

**2.** On cross-examination, Officer Holland admitted that the bottle in question was translucent and that it was impossible to determine anything other than that the bottle contained *some* sort of tablets.

**3.** Defendant's Exhibit One, the certificate of title of the vehicle appellant was driving the night of his arrest, showed the vehicle to be owned by one Willie Earl Gray, a friend of the appellant.

**4.** The appellant further testified that he remembered making a proper left turn and distinctly recalled seeing the patrol unit following him for two or three blocks before they turned on their emergency lights.

**5.** In his final ground of error, the appellant contends that the admission of this statement

was reversible error. Given our disposition of appellant's first ground of error, we need not decide whether an oral statement in the nature of a confession made while in custody that is not taken under V.A.C.C.P., Art. 38.22, § 3(a), cf. *Jimmerson v. State*, 561 S.W.2d 5 (Tex.Cr. App.1978) and see *Stutes v. State*, 530 S.W.2d 309 (Tex.Cr.App.1975), is nevertheless admissible for impeachment under § 5.

**6.** Vernon's Ann.Civ.St. Art. 6701d, § 68(a) provides in pertinent part:

"(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 65, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such

*v. State*, 547 S.W.2d 266 (Tex.Cr.App.1976) [7]; *Tores v. State*, 518 S.W.2d 378 (Tex.Cr. App.1975), running a stop sign authorized arrest; *Wilson v. State*, 511 S.W.2d 531 (Tex.Cr.App.1974), running a red light. While this Court continues to revisit the *Taylor* doctrine [8] from time to time, see, e. g., *Duncantell v. State*, 563 S.W.2d 252, 256 (Tex.Cr.App.1978), it has examined each precise fact situation to determine that after the traffic stop each movement made by an officer is factually and legally justified,[9] for the Supreme Court of the United States has not yet applied the "stop and frisk" principle to a moving motor vehicle. See its most recent treatment of the verity that citizens are not shorn of Fourth Amendment interests "when they step from sidewalks into their automobiles," *Delaware v. Prouse*, 440 U.S. 648, at 663, 99 S.Ct. 1391 at 1401, 59 L.Ed.2d 660 (1979). The search in the instant case not being tied to the traffic offense, we must determine step by step its ultimate justification. See *Wilson*, supra.

Officer Holland directed the beam of his flashlight into the interior of the automobile as appellant was getting out of it and,

in response to the request of Officer Harrison, was walking away from it to the back of the car. Officer Harrison, in the best position to know, was asked and answered as follows:

"Q: So, he got out, and you took him to the back of the car?

A: Yes, sir.

\* \* \* \* \* \*

Q: Again, he wasn't in motion to get back in his car?

A: He could have been.

Q: But you wouldn't let him?

A: No, sir."

While Officer Harrison, making a custodial arrest, had the absolute, unqualified right, to then and there *search* the person of appellant, *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973), he did not even frisk him—thereby plainly indicating he had no fear whatsoever for his safety or that of his partner.[10]

What, then, is Officer Holland doing at the car shining his flashlight inside it? [11]

---

movement can be made with safety. Except under conditions set out in Section 24(a) no person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided."

**7.** Noting a legislative change in § 68(a), note 6, supra, since the decisions in *Willett v. State*, 454 S.W.2d 398 (Tex.Cr.App.1970) and *Hall v. State*, 488 S.W.2d 788 (Tex.Cr.App.1973), the Court found that "turn signals are now mandatory, regardless of the traffic conditions at the time of the turn" and accordingly concluded that since Beck had violated that law in making his turn "the officers were legally justified in effecting his arrest," 547 S.W.2d at 267.

**8.** From *Taylor v. State*, 421 S.W.2d 403, 407 (Tex.Cr.App.1967): "If, while questioning a motorist regarding the operation of his vehicle, an officer sees evidence of a criminal violation in open view, or in some other manner acquires probable cause on a more serious charge, he may arrest for that offense and incident thereto conduct an additional search for physical evidence." Often overlooked is that the *Taylor* doctrine embraces probable cause and exigent circumstances; it does not invoke the exceptionable search for weapons incident to arrest. The distinction was clearly made in *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

**9.** As in *Beck, Tores* and *Wilson*, supra.

**10.** In his testimony Officer Holland also conceded that he had no fear for his safety for appellant "was nowhere near me."

**11.** In *Pruitt v. State*, 389 S.W.2d 475, 476 (Tex. Cr.App.1965) the Court thought that "the search actually started when the officer shined or flashed the flashlight in the back of the car" and held further acts of the officer in making a search of a closed box—it turned out to be a case of wine—he had thus been able to see in the back of the motor vehicle, that he had stopped to make an operator's license check, was invalid. *Onofre v. State*, 474 S.W.2d 699, 701 (Tex.Cr.App.1972) overruled *Pruitt* "to the extent" it conflicted with "the holding in this case." In *Onofre*, during early morning hours, the officer observed appellant and another man in a parked automobile behind a lounge that was closed and unlighted, and as he approached them Onofre "dumped something under the seat" or appeared to do so, and he and the other occupant got out of the automobile, leaving a door open. Another officer appeared on the scene and was told by the first one that "they stuck something under the seat" and to be "cautious." Shining his light into the automobile he saw on the front seat some cigarette papers and a marihuana cigarette, some of the

It has been suggested that, even with the traffic offender out and away from his car, a "frisk" of the interior of the vehicle is a permissible protective measure in anticipation that the citizen will be permitted to return to it, free to go on his way. See *Wilson v. State*, 511 S.W.2d 531, 538 (Tex. Cr.App.1974) (Douglas, J., dissenting) and *Beck v. State*, 547 S.W.2d 266, 269 (Tex.Cr. App.1976) (Douglas, J., dissenting). Putting aside the absence of articulable facts and circumstances that objectively warrant a belief that precautionary measures are reasonably necessary, the speculative possibility is not even presented by the facts before us for the simple reason that Officer Holland was at the door while Officer Harrison was detaining appellant and *before* Officer Harrison had decided whether to permit appellant to return to the automobile. Thus the theory is not susceptible to application here.

From *Wilson v. State*, supra,[12] and *Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972), for reasons exhaustively given in the seminal opinion by Justice Mosk for the Supreme Court of California in *People v. Superior Court of Yolo County*, 3 Cal.3d 807, 91 Cal.Rptr. 729, 478 P.2d 449 (1970), response by an officer to what he conceives to be "body language" of the citizen being stopped is of little moment, especially when

movement is "ambiguous conduct which the arresting officers themselves have provoked," *Wong Sun v. U. S.*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). Officer Holland stopped short of asserting that *his* approach to the vehicle was occasioned by his observation of the "dipping" movement. The State does not contend that his presence near the door was justified by what he had seen. Indeed, the State advances no particular justification whatsoever for his presence.

Obviously, Officer Holland was getting himself in position to "plain view" the interior of the automobile appellant was driving. Consonantly, the State emphasizes through reiteration that closed translucent container was observed and discovered "in plain view."[13] Significantly, though, the State does not cite or discuss a single authority on the point in reply to appellant's reliance on the proposition that is basic to the plain view doctrine—that it must be immediately apparent to the police that they have evidence before them. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Officer Holland testified that given the translucent quality of the container, it was impossible to determine the nature of the

contents of which had spilled out onto the seat. The entire interior was thereafter searched. The *Onofre* court found that "the officers here were discharging a 'legitimate investigative function' when they approached the appellant's automobile" and held that the cigarette and seeds "were in 'plain view' and as such were not the products of an illegal search," 474 S.W.2d at 701. The court then noted "further" the expression of the Fifth Circuit to the effect that in a plain view situation the use of visual aid such as a flashlight does not change "the character of a visual encounter by a police officer," and cited other authorities in accord, including *Legall v. State*, 463 S.W.2d 731 (Tex. Cr.App.1971) and *Abbott v. State*, 472 S.W.2d 142 (Tex.Cr.App.1971). We observe that in every case the viewing officer was acting out of an articulated concern for personal safety, for humanitarian purposes or with probable cause. The true rule is, as recently stated by the Fifth Circuit in *U. S. v. Arredondo-Hernandez*, 574 F.2d 1312 (5 Cir. 1978), that the use of a flashlight by an officer to aid his vision does not transform "an *otherwise justifiably* plain view

observation into an illegal search." Which brings us back to the question posed in the text above.

12. Close to our fact situation, *Wilson* finds and concludes:

"In the instant case, the officer observed appellant making a movement before his vehicle was brought to a stop for a traffic violation. This observation was neither coupled with reliable information nor suspicious circumstances which would give rise to probable cause to search of (sic) the vehicle. We conclude that the arresting officer's observations, standing alone, did not constitute probable cause to conduct a warrantless search of appellant's car."

13. What Officer Holland and the State overlook is the first limitation on the doctrine: "(T)hat plain view *alone* is never enough to justify the warrantless seizure of evidence", *Coolidge v. New Hampshire*, 403 U.S. at 468, 91 S.Ct. at 2039 (emphasis in original).

tablets therein. It is therefore clear that at the moment that the container came into "plain view" Officer Holland had no basis for believing that its contents were inherently suspicious or that they were in fact contraband. It was only after he seized, opened and examined the container and noticed the inscription on the tablets that he formed the opinion that they were in fact a controlled substance. We believe that this "two-step" approach to the instant seizure cannot be squared with the Supreme Court's interpretation of the plain view doctrine as enunciated in *Coolidge v. New Hampshire*, supra, where Justice Stewart noted:

> Of course, the extension of the original justification [for the plain view exception] is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges. 403 U.S. at 466, 91 S.Ct. at 2038.

Following the teachings of *Coolidge v. New Hampshire*, supra, the holding of this Court in *Thomas v. State*, 572 S.W.2d 507 (Tex.Cr.App.1976) seems to be dispositive: "drugs are not inherently contraband, stolen goods or objects dangerous in themselves." *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr.App.1973) sheds more than a minimal amount of light on this subject. In *Nicholas* the appellant was arrested in his living room and after he had been read his constitutional rights, one of the arresting officers noticed some photographic negatives on the bar and on the kitchen stove. The negatives were seized and later led to appellant's subsequent arrest and conviction for rape. In reversing the appellant's conviction, this Court held that the seizure of the negatives could not be upheld under the ambit of the plain view exception because one officer testified that he could not determine the contents of the negatives until after he had held them up to the light. As Judge (then Commissioner) Tom Davis observed:

In the instant case, the officers had, prior to examining the negatives, neither knowledge nor mere suspicion of an offense related to the film. What was in "plain view" in the apartment was not evidence of any crime or criminal behavior. It was not contraband or fruits or instrumentalities of any offense about which they knew or suspected upon entering the apartment. The officers did not inadvertently come across a piece of evidence incriminating the accused. The negatives were not incriminating until after the officers had examined them. Thus, it was not "immediately apparent" to the officers that they had evidence before them. (Citation and footnotes omitted.)

We think it clear that the instant case turns on these holdings and, accordingly, we hold that the instant seizure did not fall within the parameters of the plain view exception. Accord: *DeLao v. State*, 550 S.W.2d 289 (Tex.Cr.App.1977) and *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr.App.1976).

Having determined that the initial seizure of the container was unreasonable and that the fruits thereof should have been suppressed, we pause only to note that the second container of tablets must similarly be suppressed as being derivative of the initial search and therefore "fruit of the poisonous tree." See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

For the reason pointed out, we find that the trial court abused its discretion in revoking appellant's probation.

The judgment is reversed and the cause remanded.

DOUGLAS, Judge, dissenting.

The majority errs in reversing this case because it overlooks the doctrine of curative admissibility.

The appellant testified that he picked up a 1977 grey Mercury Cougar from its owner, William Gray, in order to pick up some ice for Gray's nightclub. A Texas Certificate of Title was introduced into evidence

to this effect. Howard drove the car for a few minutes before Officers Holland and Harrison pulled the car over to the side of the road. He testified that he had been in the car for three minutes at most, that he had never seen those pill bottles before, and that he had no idea they were in the car. He then stated that they were not his pills, nor did he know to whom they belonged.

The admission of improper evidence cannot be urged as grounds for reversal if the defendant testifies to the same facts. If a defendant admits or confirms the truth of the facts or evidence objected to, even while creating a defense based on those facts, the potential error is waived. The last and controlling case on the subject is *Ehrman v. State*, 580 S.W.2d 581 (Tex.Cr.App.1979). See also *Nelson v. State*, 509 S.W.2d 367 (Tex.Cr.App.1974); *Corbell v. State*, 508 S.W.2d 86 (Tex.Cr.App.1974).

The defense was the lack of an affirmative link between the contraband and appellant's control over the substance. It is uncontroverted that appellant was in the car and that the pills were found at his feet. By testifying to these facts, appellant waived any objection he had to the pills' admission into evidence.

The conviction should be affirmed.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

PHILLIPS, Judge.

The State files a motion for rehearing urging that the panel on original submission erred in holding Officer Holland's action did not fall within the plain view exception to the search warrant requirement. The State also reurges the doctrine of curative admissibility, as initially set forth in the dissent to the panel opinion. For the reasons that follow, we overrule these contentions.

■ It is well established that an officer may not seize contraband that falls within his view unless he is legitimately in a position to view the substance, *and* it is immediately apparent to him that the substance is

contraband. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Duncan v. State*, 549 S.W.2d 730 (Tex.Cr.App.1977); *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr.App.1973). The latter requirement is not always mentioned in conjunction with the former, because in many, if not most cases, the incriminating nature of the substance viewed is immediately obvious to all. In this case, however, the "immediately apparent" requirement is critical, and ultimately fatal, to the State's case.

Officer Holland testified that when he shined his flashlight into appellant's car as appellant got out, he observed on the floorboard in front of the driver's seat an unlabeled brown plastic prescription bottle full of tablets. Holland testified: "This drew my attention. So, I reached in the vehicle and recovered [the bottle]." Holland admitted that he could not determine what type of tablets were contained in the bottle until he took off the cap and observed the interior of the bottle. Only at that time did Holland form an opinion, based on his experience as a law enforcement officer, that the tablets were Preludin, a controlled substance. It was not immediately apparent to Holland that the bottle contained a controlled substance. That fact did not become apparent until Holland, his curiosity or suspicions aroused, seized the bottle from the car, opened it, and peered inside.

In *Nicholas*, supra, we held that a seizure of photographic negatives could not be justified under the plain view exception because the incriminating nature of the negatives (which depicted a rape) did not become apparent until the officers held the negatives to a light. In *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr.App.1976), police officers, after entering the defendant's storage locker, viewed suitcases and garbage bags that were found to contain marihuana. In holding the marihuana inadmissible at trial, we stated:

. . ., we cannot conclude that evidence showed contraband in plain sight. There were no lights inside the locker. Only by a flashlight could the officers see

the suitcases and garbage bags. It was not until the contents thereof were examined that it was determined that the contents were contraband.

In *Duncan*, supra, a police officer saw a plastic baggie protruding from the defendant's back pocket. He seized the baggie "to see what was in it," and found that it contained marihuana and heroin wrapped in tinfoil. We stated:

In the instant case, the officer was legitimately in position to view any contraband; however, by his own testimony, he did not know what the plastic baggie contained and he expressed no suspicion as to what it might contain. Even though we are aware of the popular use of plastic bags as containers for controlled substances, we cannot hold that the bag itself is contraband in the absence of some showing that the officer saw what appeared to be a contraband substance in the bag.

Finally, in *DeLao v. State*, 550 S.W.2d 289 (Tex.Cr.App.1977), we held that an officer's seizure of a balloon that contained heroin was not justified under the plain view exception, stating

. . ., the testimony taken at the examining trial establishes that the officer was not aware that incriminatory evidence was before him when he seized the balloon. Williams testified that he returned to the open window, saw a red balloon, and seized it.

The State urges that it is a well known fact that heroin is kept in balloons. The officer's testimony, however, does not demonstrate that he was cognizant of this "well known" fact or immediately aware that heroin was in the balloon at the time of the seizure. *Coolidge v. New Hampshire*, supra; *Nicholas v. State*, supra. The seizure must be based on what was known by the officer at the time he acted, yet this record contains not a scintilla of evidence that the officer knew what the State now alleges in its brief on appeal is a "well known" fact.

.    .    .    .    .

The circumstances of this case fail to establish that what was in "plain view" was evidence of any crime or criminal behavior. A red balloon in "plain view" on the window sill was not "contraband or fruits or instrumentalities" of any offense. . . .

These cases are dispositive of the issue in this case. Holland did not become aware of the incriminating nature of the contents of the prescription bottle until he recovered the bottle from the car, opened it, and observed its contents. There is no evidence in the record that, upon observing the bottle in the car, Holland was immediately cognizant that it contained a controlled substance, or could reliably infer from his experience as a police officer that the bottle contained controlled substances. Prescription bottles are used to carry all sorts of things, including tablets lawfully possessed. So far as we know or learn from the record in this case, it is not a well-known fact that such containers are used to carry substances that are unlawfully possessed rather than lawfully possessed. See *DeLao*, supra.

Nor does Holland's testimony that he saw appellant, before stopping, "dip down in his seat down towards the steering wheel" change the result. Neither Holland nor Harrison, who also saw the movement, testified that the movement seemed furtive or suspicious, as opposed to innocent. Neither of them saw fit to mention it in their offense report. Holland did not testify that the movement had anything to do with his action in shining his flashlight in the car, or that he seized and opened the bottle because the movement led him to be suspicious of the bottle's contents. He simply stated, as noted earlier, that the bottle drew his attention, so he reached in and opened it.

This Court has noted more than once that "furtive" gestures will not supply probable cause to search a vehicle because of the ambiguous and potentially innocent nature of such movements. *Turner v. State*, 550 S.W.2d 686 (Tex.Cr.App.1977); *Beck v. State*, 547 S.W.2d 266 (Tex.Cr.App.1976); *Wilson v. State*, 511 S.W.2d 531 (Tex.Cr.

App.1974); *Brown v. State,* 481 S.W.2d 106 (Tex.Cr.App.1972). Here, there is no evidence that the movement was even furtive. In fact, there is nothing to suggest that the movement was anything but innocent. Appellant's movement lacked probative value, and could not justify Holland's otherwise unlawful seizure of the bottle. See *Wilson,* supra, at 533–534.

Holland did not have probable cause to seize the bottle and examine its contents, and the evidence should not have been admitted. The State's first contention is overruled.

The State urges upon us, as the dissent did upon the majority of the panel, that appellant waived the error in the admission of the tablets at trial, by testifying that he was in the car and the pills were found at his feet. Appellant testified that he borrowed the car in question in order to pick up some ice for the car's owner, and had only been in the car for a couple of minutes when he first noticed the officers following him. According to appellant he had never seen the prescription bottle before, he had no idea it was in the car, and the tablets were not his.

As the dissent noted, the improper admission of evidence over objection is rendered harmless by the admission of other evidence of the same facts. *Thomas v. State,* 572 S.W.2d 507 (Tex.Cr.App.1978, Opinion on State's Motion for Rehearing); *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr. App.1973, Opinion on State's Motion for Rehearing). A corollary to this rule, however, is that the harmful effect of improperly admitted evidence is not cured by the introduction of rebuttal evidence designed to meet, destroy, or explain the improper evidence. *Thomas,* supra; *Nicholas,* supra; *Alvarez v. State,* 511 S.W.2d 493 (Tex.Cr. App.1973, Opinion on State's Motion for Rehearing). Further, *Thomas* altered the rule as applied to evidence obtained by unlawful police practices, in light of the holding of *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968). We stated:

Under *Harrison,* the "question is not whether the petitioner made a knowing decision to testify, but why. If he did so in order to overcome the impact of the confessions illegally obtained and hence improperly introduced," the testimony is tainted by the same illegality that rendered the confessions themselves inadmissible.

We find that *Harrison* does in fact add a corollary to the doctrine of curative admissibility, i. e., the harmful effect of improperly admitted evidence which is obtained by illegal police practices is not cured when a defendant gives testimony on direct examination which establishes the same or similar facts unless the State can show that its illegal action in obtaining and introducing the evidence did not impel the defendant's testimony. . .

In *Thomas* police officers stopped the defendant, unlawfully searched his vehicle, and found biphetamine, a controlled substance, in a coat lying on the seat. The defendant testified that the coat belonged to someone else, and he was returning the coat. Relying on *Harrison v. United States,* supra, we held that the State made no showing that its unlawful action did not impel the defendant's testimony, and in fact, it was apparent that the defendant would not have testified had the biphetamine not been admitted, because the biphetamine was the only evidence the State introduced.

Subsequently, in *Evers v. State,* 576 S.W.2d 46 (Tex.Cr.App.1978), we held that a defendant charged with unlawfully carrying a handgun did not waive his error regarding the lawfulness of the search that produced the handgun by testifying concerning his possession of the gun in order to assert his statutory defenses of "travel" and "business." The *Evers* court noted that its decision was in accord with *Thomas,* supra, and stated that a blanket application of the doctrine of curative admissibility

. . . would place a defendant in a dilemma: he could waive the search issue and assert his defense, hoping to win at

trial; or sit mute, hoping for a reversal on the search issue. Such a result would be "an impermissible and unconstitutional chill upon Appellant's right to author and draft his own defense."

.    .    .    .    .

See also *Craddock v. State*, 553 S.W.2d 765 (Tex.Cr.App.1977, Opinion on Appellant's Motion for Rehearing) (defendant's assertion of the defense of entrapment did not waive the error in admitting evidence).

■ In this case, as in *Thomas*, supra, the State introduced only the evidence improperly seized by the officer. There is no showing by the State that the improper admission of this evidence did not impel appellant's testimony, and, in fact, it is clear that appellant testified in order to advance his defense that he knew nothing about the tablets and did not possess them. We will not require appellant to waive his objection to the improper admission of the tablets when it is clear that he only testified because the tablets were admitted in evidence, and his testimony was necessary to assert his defense to the charges brought against him. *Harrison v. United States*, supra; *Evers*, supra; *Thomas*, supra; *Craddock*, supra.

In a supplement to its motion for rehearing, the State urges that we reconsider the modification to the rule of curative admissibility that was established in *Thomas*. Far from causing us to retreat from that modification, this case convinces us of its wisdom. We now reaffirm our holding in *Thomas*.

The State's motion for rehearing is overruled.

DALLY, J., dissents.

## ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge, dissenting.

The majority of this Court reverses this case because it was not immediately apparent to the policeman who arrested Howard that the seized substance was contraband. The judgment should be affirmed.

Howard was seen by the police driving down a street in Houston. He made a left-hand turn without using the proper signal. The police turned on their warning lights and stopped him. As Howard was pulling over, one of the police officers testified that he saw Howard "dip down in his seat toward the steering wheel." After Howard stopped, the police officers got out of their car and approached this vehicle. As they did, Howard also got out of his car. Officer R. W. Holland then testified to the following sequence of events:

"As he stepped out of the vehicle, I shone my flashlight into the vehicle and observed a brown plastic medicine jar containing a large amount of tablets on the floorboard right in front of the driver's seat."

The majority states that at that point it "was not immediately apparent to Holland that the bottle contained a controlled substance."

The majority misses the point concerning evidence seized in plain view. In *Holman v. State*, 474 S.W.2d 247 (Tex.Cr.App.1971), the policeman saw the defendant pull off an interstate highway in a weaving and swerving manner, enter the driveway of a service station, get out of his pickup truck leaving the door open and stagger toward a telephone booth. The officer pulled up in the service station and approached the defendant to determine if there was anything wrong. He then turned around to return to his patrol car and, as he did so, he saw in plain view, through the defendant's open door, large bottles with pills in them. The observation was made from a distance of some fifty-five feet. We held that that was sufficient evidence of a *criminal violation* to justify an arrest and subsequent search.

It need not have been immediately apparent to Officer Holland that the pills in the translucent bottle were a controlled substance; it need only be apparent that Howard was committing a criminal act. Article 4476–14, V.A.C.S. (Dangerous Drugs Act) sets forth the following criminal violation:

"The following acts, the failure to act as hereinafter set forth, and the causing of any such act or failure are hereby declared unlawful, except as provided in Section 4:

"(a) The delivery or offer of delivery of any dangerous drug unless:

"(1) Such dangerous drug is delivered or offered to be delivered by a pharmacist, upon an original prescription, and *there is affixed to the immediate container in which such drug is delivered or offered to be delivered a label bearing the name and address of the owner of the establishment from which such drug was delivered or offered to be delivered*; the date on which the prescription for such drug was filled; the number of such prescription as filed in the prescription files of the pharmacist who filled such prescription; the name of the practitioner who prescribed such drug; the name of the patient, and if such drug was prescribed for an animal, a statement showing the species of the animal; and the directions for use of the drug as contained in the prescription; or

"(2) Such dangerous drug is delivered or offered to be delivered by a practitioner in the course of his practice and *the immediate container in which such drug is delivered or offered to be delivered bears a label on which appears the directions for use of such drug*, the name and address of such practitioner, the name of the patient, and if such drug is prescribed for an animal, a statement showing the species of the animal.

" \* \* \*

"(d) The possession of a dangerous drug by any person unless such person obtained the drug under the specific provision of Section 3(a)(1) and (2) of this Act." (Emphasis added)

The possession of the unlabeled medicine jar by appellant gave rise to an apparent violation of the Dangerous Drugs Act.

The distinction between labeled and unlabeled bottles is clear in light of *Thomas v. State*, 572 S.W.2d 507 (Tex.Cr.App.1976). There the Court held that the viewing of a prescription bottle *with an attached label* did not authorize an arrest and subsequent search under the plain view theory. In *Spencer v. State*, 489 S.W.2d 594 (Tex.Cr. App.1973), however, the plain view doctrine did justify a search where the defendant, after being stopped for a traffic violation, got out of his car and a brown pill bottle fell out of the car onto the pavement. The police officer picked up the bottle and noticed that it contained three capsules containing what later was determined to be heroin. This was held to be a justifiable plain view seizure.

To hold, as does the majority, that a police officer must be able to immediately and precisely determine the exact nature of a criminal offense upon first glance before the plain view doctrine will be applicable is to put an unnecessary and constitutionally unjustifiable restriction upon legitimate police investigations.

The State's motion for rehearing should be granted and the judgment should be affirmed.

W. C. DAVIS, J., joins in this dissent.