Stine v. State 







AFFIRMED
FEBRUARY 8, 1990
                     
                      NO. 10-88-101-CR
Trial Court 
# 27,990
                            IN THE
                       COURT OF APPEALS
                            FOR THE
                    TENTH DISTRICT OF TEXAS
                            AT WACO

                   * * * * * * * * * * * * *

JOHN STEPHEN STINE,
   Appellant
v.

THE STATE OF TEXAS,
   Appellee

    * * * * * * * * * * * * *

66th Judicial District Court
Hill County, Texas

                   * * * * * * * * * * * * *

                         O P I N I O N

                         * * * * * * *
A jury found Appellant guilty of the murder of Raymond Krieger
and assessed his punishment at fifty years in prison and a $10,000
fine. See TEX. PENAL CODE ANN. § 19.02 (Vernon 1989). Points on
appeal relate to the denial of a motion to suppress evidence seized
in a warrantless search of an automobile, the failure to instruct
the jury on the lesser included offense of voluntary manslaughter,
and the admission of evidence of prior acts of misconduct and an
extraneous offense. The judgment will be affirmed.
At 7:00 a.m. on June 14, 1987, Krieger was found lying near a
road, badly beaten, and was hospitalized with serious injuries. He
said he had been beaten with a baseball bat. Hill County Sheriff's
officers soon received information that two men accompanied by two
women had been observed the previous evening forcing Krieger into
a blue and brown stationwagon. Around 10:00 a.m. the officers
were informed that two women were seen in the stationwagon in the
Live Oaks Estates Subdivision near Lake Whitney. They located
the car, stopped it, and apprehended Evelyn Liehsel and Lauralyn
Jackson. Approximately one hour later, an officer returned to
the stationwagon, which had been left parked in a private
driveway near where it had been stopped, and retrieved a bloody
baseball bat and towel from the back of the vehicle. Appellant
was arrested around noon that same day. Krieger died from his
injuries during the early morning hours of June 15. The bat and
towel were introduced into evidence at Appellant's trial.
Appellant tried to suppress the baseball bat and towel as
evidence. At the pretrial suppression hearing, Deputy West
testified that he saw a bloody towel lying behind the driver's
seat of the stationwagon after it was stopped. Although he was
investigating an assault, West claimed that the towel did not
have any particular significance to him at the time he first saw
it. Deputy Rizo also saw a bloody bat and towel in the back of
the stationwagon after it was stopped. However, neither officer
seized the bat or towel when they arrested Liehsel and Jackson. 
Instead, they left the stationwagon unattended and apparently
unlocked in a nearby private driveway. West admitted that no
inventory was done on the car when the women were arrested.
While interrogating Liehsel at the police station, West
discovered that a baseball bat had been used to beat Krieger. 
Rizo overheard that discussion and told West that he had noticed
a bat in the back of the stationwagon. Approximately one hour
after the apprehension of Liehsel and Jackson, Rizo returned to
the car and retrieved the bat and towel. He again left the car
unattended in the private driveway. 
Appellant's first point is that the court erred when it
denied his motion to suppress. He contends the bat and towel
were obtained as a result of an unreasonable search and seizure. 
The State argues that Appellant could not complain about the
search and seizure because he did not have a legitimate
expectation of privacy in the stationwagon, which was owned by a
third party.
Fourth Amendment rights are personal and cannot be asserted
vicariously. Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 425,
58 L.Ed.2d 387 (1978). Therefore, a person must have a
legitimate expectation of privacy in the area searched before he
can complain about the violation of the Fourth Amendment. Id. 99
S.Ct. at 433. Although the expectation of privacy in a car is
more limited than the expectation of privacy in a home, Fourth
Amendment rights are not lost when a person enters a car. Howard
v. State, 599 S.W.2d 597, 600 (Tex. Crim. App. [Panel Op.] 1979). 
The Fourth Amendment protects people, not places. United States
v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538
(1977). Thus, when determining whether there is an expectation
of privacy, property rights, although relevant, are not the only
factors to be considered. Bass v. State, 713 S.W.2d 782, 786
(Tex. App.--Houston [14th Dist.] 1986, no pet.).
Timothy Lovely, Appellant's employer, testified at the
suppression hearing that the owner of the stationwagon had
brought the car to his business for repairs, and had authorized
him or his employees to test-drive the vehicle after it was
repaired. Lovely said that he had given Appellant permission to
drive the car during the weekend the bat and towel were seized
from the vehicle. Appellant, who had permissive authority to
drive the stationwagon when the seizure occurred, had a
reasonable expectation of privacy in the vehicle. See Howard,
599 S.W.2d at 605 (holding that a defendant who borrowed a car
had "standing" to complain about the admission of evidence
obtained in a warrantless search of the vehicle).
Warrantless searches are per se unreasonable under the
Fourth Amendment. Katz v. United States, 389 U.S. 347, 88 S.Ct.
507, 514, 19 L.Ed.2d 576 (1967). Exceptions to this rule
include: (1) a search incident to a valid arrest; (2) the
"automobile exception"; (3) an inventory search; and (4) the
"plain view exception." However, these exceptions are "jealously
and carefully drawn." Jones v. United States, 357 U.S. 493, 78
S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958). The burden is on the
government to show that a warrantless search and seizure falls
within one of the exceptions, and that the exigency of the
circumstances made the seizure without a warrant imperative. 
McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 193, 2
L.Ed.2d 1514 (1948). Evidence obtained in violation of the
constitution must be suppressed, and the court has no discretion
in the matter. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon
Supp. 1990); Polk v. State, 738 S.W.2d 274, 276 (Tex. Crim. App.
1987).
A well-known exception to the general rule that a warrant
must be obtained before a search is conducted is a search
incident to a valid arrest. See e.g., Chimel v. California, 395
U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). A search is
incident to an arrest only if it is "substantially
contemporaneous" with the arrest and is confined to the area
within the immediate control of the person arrested. Vale v.
Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409
(1970). Furthermore, once a person is arrested and in custody,
searching his car at another location without a warrant is not a
search incident to the arrest. Preston v. United States, 376
U.S. 364, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). Because the
baseball bat and towel were removed from the car approximately an
hour after Liehsel and Jackson were arrested and in custody at
the station, the search was not "substantially contemporaneous"
with their arrest, and the items seized were not then within
their immediate control. Therefore, the search cannot be
justified as a search incident to an arrest.
The "automobile exception," which allows police to make a
warrantless search of an automobile stopped on a road whenever
they have probable cause to do so, is another exception to the
warrant requirement. See e.g., Carroll v. United States, 267
U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925). The United States
Supreme Court has held that an immediate search based on probable
cause is constitutionally permissible because a "car is moveable,
the occupants are alerted, and the car's contents may never be
found again if a warrant must be obtained." Chambers v. Maroney,
399 U.S. 42, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). 
Furthermore, "if an effective search is to be made at any time,
either the search must be made immediately without a warrant or
the car itself must be seized and held without a warrant for
whatever period is necessary to obtain a warrant for the search." 
Id. 90 S.Ct. at 1981 (emphasis added). However, if a car may be
searched where it is stopped, it may also be seized and taken to
the station for the warrantless search. See id. Warrantless
searches of cars based on probable cause may be upheld only if
there are exigent circumstances which make obtaining a warrant
impracticable. Gauldin v. State, 683 S.W.2d 411, 414 (Tex. Crim.
App. 1984).
Although the officers had probable cause to search the
stationwagon when they stopped it, they failed to conduct an
immediate search or to seize the car and take it to the station
to be searched. Instead, they parked it in a private driveway
and left it unattended until they returned without a warrant
approximately an hour later to seize the bat and towel. Although
Appellant had not been apprehended at the time the evidence was
seized, this alone did not constitute exigent circumstances which
made obtaining a warrant impracticable. The officers' delay in
searching the car and their failure to exercise control over it
clearly indicated that exigent circumstances did not then exist
and that they could have obtained a search warrant. The
automobile exception does not apply to this case.
A third exception to the warrant requirement is an
"inventory search" of a vehicle lawfully impounded. South Dakota
v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). 
The rationale behind this exception is to protect the belongings
in the vehicle from theft, to protect the police department from
liability for the loss of the belongings, and to enable police to
respond to theft or vandalism. Id. 96 S.Ct. at 3097. Here,
Deputy West admitted that no "inventory" of the vehicle was done
when Liehsel and Jackson were arrested. Furthermore, the
officers did not seize the stationwagon when they apprehended
Liehsel and Jackson or when they took the bat and towel. The
inventory exception does not apply because the record is devoid
of any evidence that the officers conducted a lawful inventory
search. See Gauldin, 683 S.W.2d at 415. 
Finally, evidence in "plain view" which an officer
inadvertently discovers may be seized without a warrant. 
Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 2038, 29
L.Ed.2d 564 (1971). However, plain view alone never justifies a
warrantless seizure of evidence. Id. 91 S.Ct. at 2039. The
criteria for a plain-view seizure include: (1) the officer had a
legitimate reason to be where he was; (2) the discovery of the
item in plain view was inadvertent; and (3) the officer had
probable cause to believe that the item in plain view was
evidence. Howard, 599 S.W.2d at 603 (on rehearing). Assuming
that the criteria are met, officers may seize the item
immediately. Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 1542,
75 L.Ed.2d 502 (1983). However, "where the police know in
advance the location of the evidence and intend to seize it . . .
the requirement of a warrant to seize imposes no inconvenience
whatever." Coolidge, 91 S.Ct. at 2040. Furthermore, to extend
the scope of a warrantless search "to the seizure of objects--not
contraband nor stolen nor dangerous in themselves--which the
police know in advance they will find in plain view and intend to
seize, would fly in the face of the basic rule that no amount of
probable cause can justify a warrantless seizure." Id. at 2041.
Although West and Rizo inadvertently discovered the bat and
towel while lawfully apprehending Liehsel and Jackson and had
probable cause to believe the items were evidence of a crime,
they did not seize them at that time. However, when Rizo
returned an hour later to seize the bat and towel without a
warrant, he knew the location of the car, knew the bat and towel
were in it, and intended to seize the items. Under the
circumstances, obtaining a warrant would not have imposed an
inconvenience on the officers. See id. at 2040. To justify a
warrantless search in this type of situation would "fly in the
face of the basic rule that no amount of probable cause can
justify a warrantless seizure." See id. at 2041. 
Because the facts will not fit within any of the narrow
exceptions to the general rule requiring a warrant before a
search is conducted, the baseball bat and towel were illegally
seized and should have been suppressed as evidence. See Polk,
738 S.W.2d at 276. However, the critical inquiry is whether this
court can determine beyond a reasonable doubt that the jury's
viewing of the murder weapon and a towel with Krieger's blood on
it did not contribute to Appellant's conviction or punishment. 
See TEX. R. APP. P. 81(b)(2); Smith v. State, 542 S.W.2d 420, 422
(Tex. Crim. App. 1976).
The State introduced into evidence numerous, color
photographs of Krieger's battered body. These photographs, which
were taken after Krieger's death, graphically and grotesquely
depicted the nature and severity of his injuries. Dr. Weiner, a
pathologist, testified that Krieger had sustained injuries "to
all aspects of his body," which included massive injuries to his
face, cheek, forehead, eyes, as well as fractured ribs, a
punctured lung, brain damage, and bleeding into his chest cavity. 
His expert opinion was that the injuries were inflicted by a
"blunt" object and were consistent with injuries inflicted by a
baseball bat.
Lauralyn Jackson recounted the sequence of events which
culminated in Krieger's death. She saw Appellant, who was
holding a baseball bat, and Jerry Miller drag Krieger out of his
house with a towel wrapped around his waist. This was the bloody
towel later seized from the stationwagon. She said that Krieger
was "horrible looking" because he had already been beaten "so bad
with that baseball bat." Jackson claimed that she heard Krieger
being beaten with the bat at the lake and in the stationwagon. 
Krieger told the person who found him by the side of the road
that he had been beaten with a baseball bat.
The evidence was overwhelming that Krieger sustained massive
injuries which resulted in his death; that his injuries were
inflicted by a baseball bat; and that Appellant and Miller were
responsible for inflicting those injuries over a period of
several hours. Jackson's and the pathologist's testimony, along
with the photographs of Krieger's body and of the lakehouse where
he had been tied to a chair, established the savage nature of the
attack. 
Assuming that the bat and towel had not been admitted as
exhibits, the jury still had ample evidence before it which would
have easily justified Appellant's conviction and fifty-year
sentence. Moreover, the photographs of Krieger's injuries and
Jackson's testimony about Appellant's use of a baseball bat to
inflict the injuries in a calculated, cruel, and premeditated
manner removed whatever prejudice might have otherwise resulted
from the bat and towel being erroneously admitted as evidence. 
To hold otherwise would denigrate the jury's common sense and
approach incredulity. Although the court erred when it denied
the motion to suppress, the error was harmless because the record
reflects beyond a reasonable doubt that it did not contribute to
Appellant's conviction or punishment. Point one is overruled.
Appellant requested an instruction on the lesser-included
offense of voluntary manslaughter, and objected to the charge
because it failed to include the instruction. He contends in
point two that the failure to charge the jury on voluntary
manslaughter was error.
A charge on the lesser-included offense of voluntary
manslaughter is not appropriate unless there is evidence that the
defendant acted "under the immediate influence of sudden passion
arising from adequate cause." Marquez v. State, 725 S.W.2d 217,
223-24 (Tex. Crim. App. 1987); see TEX. PENAL CODE ANN. §
19.04(a) (Vernon 1989). "Sudden passion" is defined as "passion
directly caused by and arising out of provocation by the
individual killed or another acting with the person killed which
passion arises at the time of the offense and is not solely the
result of former provocation." TEX. PENAL CODE ANN. § 19.04(b)
(Vernon 1989). "Adequate cause" means a "cause that would
commonly produce a degree of anger, rage, resentment, or terror
in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection." Id. at § 19.04(c).
Appellant did not act in sudden passion, but acted in a
calculated, premeditated, and cold-blooded manner. Apparently,
Krieger was beaten because he would not return two guns borrowed
from Evelyn Liehsel, the woman arrested with Jackson in the
stationwagon. On the evening of the beatings, Calvin Fulton
heard Appellant threaten to kill Krieger if the guns were not
returned. Appellant went to Krieger's home at approximately 6:00
p.m., beat him, and forced him into the stationwagon. He then
took Krieger to the lake, beat him again, and apparently almost
drowned him. Krieger was then taken to the lake house and bound
while Appellant went to a bar. Upon his return, Appellant put
Krieger back into the stationwagon and began to look for a place
to dump him from the car. Throughout the drive, which included a
stop for gas, Krieger was beaten by Appellant with the baseball
bat until he was dumped on the side of the road.
The events surrounding the killing spanned two to three
hours, which negated the element of sudden passion. 
Additionally, nothing in the record indicates that Appellant was
provoked by Krieger. Although there was testimony that Appellant
was "mad," to raise the issue of voluntary manslaughter the
evidence must show that the anger was the result of an act of
provocation on the part of the deceased. See Marquez, 725 S.W.2d
at 224. Furthermore, killing someone for refusing to return two
guns to Appellant's girlfriend did not raise the issue of
voluntary manslaughter because the response was not that of an
ordinary person. See Dobbins v. State, 636 S.W.2d 276, 277 (Tex.
App.--Fort Worth 1982, no pet.).


 Point two is overruled.
In addition to the murder indictment, Appellant was also
indicted for the aggravated kidnapping of Krieger. He filed a
motion in limine requesting the court to instruct the prosecutor
not to mention any prior criminal offenses or any offense pending
against him without a hearing outside of the jury's presence to
determine their admissibility. The motion was granted. 
Appellant's third point is that the court erred when it permitted
testimony about his prior acts of misconduct and the extraneous
kidnapping offense.
Lauralyn Jackson testified that Appellant "tied [Krieger]
up." Appellant's objection to this testimony was sustained, and
the jury was instructed to disregard the statement. However, the
court refused to grant a mistrial. Appellant also objected to
Jackson's testimony that Appellant wanted "something in hand to
beat somebody up with," and to testimony concerning his prior
acts of misconduct. The court overruled these objections. 
However, the court did sustain an objection to questions
concerning Appellant's prior acts of misconduct. 
Deputy Sullins testified that Appellant had been involved in
a "very severe assault." Although Appellant failed to object to
this testimony, cross-examination revealed that his arrest was
for assault rather than a "very severe assault." Appellant
objected to Sullins' testimony that Krieger had been kidnapped
and beaten badly as non-responsive. This objection was
overruled. 
Although a defendant should not be punished for a collateral
crime or for being a criminal generally, the facts and
circumstances surrounding the commission of the offense can be
considered by the jury. Lomas v. State, 707 S.W.2d 566, 568
(Tex. Crim. App. 1986). Events do not occur in a vacuum and,
even though prejudicial, evidence explaining the context of an
offense is usually admissible. Mann v. State, 718 S.W.2d 741,
744 (Tex. Crim. App. 1986). If the evidence concerns a
continuous transaction or another offense which is part of the
case on trial, or closely interwoven with it, the evidence is
admissible to show the context of the offense. Taylor v. State,
420 S.W.2d 601, 605 (Tex. Crim. App. 1967). Here, because the
kidnaping offense and prior acts of misconduct were closely
interwoven with the offense charged, the jury was entitled to
consider them. See Moreno v. State, 721 S.W.2d 295, 301 (Tex.
Crim. App. 1986).
The court's determination of the admissibility of prior
conduct will not be disturbed on appeal unless there was an abuse
of discretion. Templin v. State, 711 S.W.2d 30, 33 (Tex. Crim.
App. 1986). Appellant has failed to show such an abuse. 
Furthermore, any error was cured because the court instructed the
jury to disregard the statements, and the statements were not of
such a nature as to irrevocably prejudice the jury. See Jackson
v. State, 536 S.W.2d 371, 372 (Tex. Crim. App. 1976). Point
three is overruled. Affirmed.
 
                      
BOB L. THOMAS
PUBLISHChief Justice