William Oliver **NICHOLAS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 46227.

Court of Criminal Appeals of Texas.

Sept. 25, 1973.

Rehearing Denied Dec. 12, 1973.

Woody & Rosen, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, John Holmes, and Ted Poe, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for rape. Trial was before the court upon a plea of not guilty. Punishment was assessed at thirty-five years.

Appellant contends that his arrest without a warrant and the search conducted incident thereto were violative of his State and Federal constitutional rights.

Houston Police learned from the National Crime Information Center computer that appellant was wanted for parole violation in New Mexico. A telephone conversation to New Mexico authorities, as related by an officer who overheard the call, confirmed that appellant was wanted in New Mexico for violating his parole. Officers Witcher and Davis were advised that appellant was wanted on a numbered fugitive warrant from New Mexico and were dispatched to a Houston address to arrest appellant. Appellant was arrested in the living room of his apartment. After appellant was handcuffed and admonished concerning his rights, Officers Witcher and Davis testified that they noticed that the apartment

was unusually warm. It was noted that the burners on an electric stove in the kitchen were on. Negatives were observed on a bar four or five feet high which divided the kitchen and the living room. In the process of turning off burners and checking the thermostat in the hall, negatives were observed lying on the kitchen stove. Numerous negatives [1] were seized by the officers and prints were made therefrom. Prints were carried to school authorities and the eleven year old girl depicted in some of the pictures having intercourse with appellant was located. It is undisputed that the State had no knowledge of the instant offense prior to the seizure of the negatives.

We find it unnecessary to determine the legality of the arrest in view of our disposition of appellant's contention concerning the seizure of the negatives.

Assuming, arguendo, that the arrest of appellant without a warrant was legal, appellant urges that the search exceeded the limits of a search incident to a lawful arrest. In support of this argument, appellant cites Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which held the scope of such a search is limited to "a search of the arrestee's person and the area 'within his immediate control' construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

The State urges that the negatives were in plain view at the time the officers arrested appellant.

Officer Witcher testified that he went into the kitchen, turned off the stove and then picked up one of the negatives, held it up to the light and observed what he thought was an "illegal act," the appellant "having intercourse with a minor child." Witcher further testified that he looked at dozens of negatives in the kitchen and living room. Some of the negatives showed appellant and an adult woman. While Witcher was looking around for more negatives, he turned down the apartment heat at the thermostat on the hall wall. Witcher stated that he could not tell what was in the negatives without holding them up to the light.

The testimony of Officers Witcher and Davis is in some degree of conflict in that Davis testified that he turned off the burner on the kitchen stove, adjusted the thermostat in the hall and went back to the kitchen and bar area to observe the negatives. Further, Davis testified that he could tell what one negative depicted that was lying on the light colored enamel stove in the kitchen without holding the negative to the light; however, he did not state what the negative purported to show.

Throughout the observation of the negatives by the officers, appellant was handcuffed. There is no indication that appellant was within reach of any of the negatives, made any effort to reach them, or even acknowledged their presence. The only information possessed by the officers at the time of appellant's arrest was that he was wanted in New Mexico on a fugitive warrant.

Despite the conflict in the testimony of the officers, it would appear that both officers went out of their way to examine the negatives.

Even though the negatives were beyond the area of appellant's "immediate control" as defined in *Chimel*, the State urges that the warrantless seizure of the negatives was proper under the "plain view doctrine."

The United States Supreme Court discussed the relationship between the Chimel holding and the "plain view" doctrine in Collidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, at n. 24 (1971):

"The 'plain view' exception to the warrant requirement is not in conflict with

---

1. The testimony concerning the number of negatives seized varied from two dozen to one hundred eighty.

the law of search incident to a valid arrest expressed in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. The Court there held that 'there is ample justification . . . . for a search of the arrestee's person and the area "within his immediate control"— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' Id. at 763, 89 S.Ct. at 2040. The 'plain view' doctrine would normally justify as well the seizure of other evidence that came to light during such an appropriately limited search . . . . Where, however, the arresting officer inadvertently comes within plain view of a *piece of evidence*, not concealed although outside of the area under the immediate control of the arrestee, the officer may seize it, so long as the plain view was obtained in the course of an appropriately limited search of the arrestee." (emphasis added)

In the instant case, one officer said he could not determine the contents of the negatives until he held them up to the light. The other officer said he went back to the negatives to see what was in them. Both officers made conscious, deliberate efforts to examine the negatives, and only then did the officers become aware that the films might be evidence of a crime. What they discovered and seized was quite unlike what was in "plain view."

In its discussion of the "plain view" doctrine in Collidge v. New Hampshire, supra, the Supreme Court said it must be *"immediately apparent to the police that they have evidence before them*; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." (emphasis added)

In the instant case, the officers had, prior to examining the negatives, neither

knowledge nor mere suspicion of an offense related to the film. What was in "plain view" in the apartment was not evidence of any crime or criminal behavior. It was not contraband[2] or fruits or instrumentalities[3] of any offense about which they knew or suspected upon entering the apartment. The officers did not inadvertently come across a piece of evidence incriminating the accused. The negatives were not incriminating until after the officers had examined them. Thus, it was not "immediately apparent" to the officers that they had evidence before them. Collidge v. New Hampshire, supra.

The officers' original entry into appellant's apartment was to arrest him for being a fugitive from New Mexico. The examination and seizure of the negatives exceeded the limits of a search incident to such arrest. The seizure was not justified under the "plain view" doctrine.

The State urges that it is presumed that any inadmissible evidence improperly admitted in trial before the court was disregarded and urges that there is ample evidence excluding the complained of photographs (printed from negatives seized in appellant's apartment) to support appellant's conviction. In this connection, the State points to the testimony of the prosecutrix relative to penetration by appellant.

The negatives seized by the officers were the product of an unlawful search and seizure and were inadmissible. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Absent the seizure of the negatives, there is no showing that the testimony of prosecutrix would have been obtained in the normal course of investigation. The offense for which appellant was prosecuted was alleged to have occurred on September 15, 1970. Prior to the seizure of the negatives on February 27, 1971, the State had no knowledge of the offense. It is undisputed that the loca-

2. See Simpson v. State, Tex.Cr.App., 486 S.W.2d 807; Legall v. State, Tex.Cr.App., 463 S.W.2d 731.

3. See Buntion v. State, Tex.Cr.App., 476 S.W.2d 317; Elliott v. State, Tex.Cr.App., 450 S.W.2d 863.

tion of prosecutrix resulted from the search and seizure of the negatives. Under these circumstances, the testimony of the prosecutrix would not have been obtained by means sufficiently distinguishable from the underlying illegality to be purged of the primary taint. Noble v. State, Tex Cr.App., 478 S.W.2d 83; Santiago v. State, Tex.Cr.App., 444 S.W.2d 758. See Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319.

For the reasons stated, the judgment is reversed and the cause remanded.

Opinion approved by the Court.

ROBERTS, Judge (concurring).

I concur in the result reached today. However, I feel that the opinion goes beyond that which is needed to decide the cause.

After finding the search and the use of the evidence obtained therefrom to be illegal, I would reverse the case at that point. The entry of this inadmissible evidence constituted sufficient harm to entitle appellant to a new trial. I feel that the majority's discussion of the "taint" from such evidence is unnecessary. The prosecutrix might well have come forward at some later date.

DOUGLAS, J., joins in this concurrence.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

On motion for rehearing, the State contends for the first time that appellant waived his complaint to the search when he called two witnesses, after the State had rested, who testified regarding the fruits of the search to which he had previously objected.

■ Prior to calling his co-defendant, Sandra Chapman, appellant preserved his objection by expressly stating to the court that he was calling said witness only to refute the matters admitted over objection and not as a waiver of his constitutional rights. Consequently, we find no waiver since the constitutionally-based objection was held meritorious by this Court.

We now examine the testimony of the defense witness Dr. Ronald Lloyd Young. During direct examination appellant made use of State's Exhibit No. 4 to show that no penetration had occurred. The State now argues that by making such use of the exhibit, appellant must be held to have waived his objection to the search.

Washington v. State, Tex.Cr.App., 484 S.W.2d 721, cert. denied, 411 U.S. 921, 93 S.Ct. 1555, 36 L.Ed.2d 314, quotes the rule of law relied upon from Cook v. State, Tex.Cr.App., 409 S.W.2d 857, as follows:

"It is a general rule that an accused cannot complain of the admission of testimony when he later testified on direct examination *to substantially the same facts*." (Emphasis added.)

This Court then applied the *Cook* rule to the facts in Washington, supra:

"The record reflects that the appellant testified *to substantially the same facts* contained in his remarks to the officer, to-wit, that he threw the gun away and that he shot his wife." (Emphasis added.)

However, the rule in *Cook* and *Washington* relates to testimonial evidence rather than physical evidence. But even aside from this, the rule will not support the State's argument since it is clear that the rule in *Washington* relies upon subsequent testimony of *substantially the same facts,* and not mere use. To better understand what a radical departure from past law would be accomplished by finding waiver of objection from subsequent mere use of the exhibit by appellant, we must examine such cases as concern application of the

rule to searches rather than purely testimonial evidence.

The rule has been stated in 5 Tex.Jur.2d, Appeal and Error—Criminal, Sec. 446, as follows:

"Generally, the admission of improper evidence will not constitute reversible error, if the same facts were proved by other and proper testimony, as where defendant voluntarily gives testimony substantially the same as that improperly admitted over objection. Nor will a judgment be reversed because of the admission of testimony of officers respecting facts obtained on an illegal search where the same facts are testified to by other witnesses, or by the accused himself."

Thus, even in search cases, the test is whether the same facts were subsequently testified to without objection. Consider Moulton v. State, Tex.Cr.App., 486 S.W.2d 334, cited in the State's brief. Therein this Court found it unnecessary to determine the lawfulness of the challenged search. Nothing was seized in the search, but there was testimony as to what was observed, and a typewriter exemplar was introduced. The defendant's testimony concerning the matter observed and the typewriter was *"essentially the same"* as that of the officer who testified. The following rule was relied upon:

". . . [T]he legality of the search need not be considered when the defendant testifies to or otherwise produces evidence *of the same facts,* or if such facts are in the record without objection." (Emphasis added.)

Also cited is Williams v. State, Tex.Cr. App., 479 S.W.2d 300, wherein the defendant complained of the introduction into evidence of marihuana seized from him, claiming the seizure was unconstitutional. We held the question of the constitutionality of the search did not have to be determined because the defendant, "testifying in his own behalf at the trial, admitted having marihuana in his possession at the time in question." We based that holding upon the same rule quoted above from *Moulton.*

It should be clear that the rule is based on the introduction of other evidence *of the same facts* without objection, and not merely the introduction of some evidence on the same subject, or some use of the exhibit. In contrast, the rule regarding the introduction of other evidence on the same matter, but not amounting to substantially the same facts, is to the contrary. In 5 Tex.Jur.2d, Appeal and Error—Criminal, Sec. 443, the rule is expressed as follows:

"Nor is the harmful effect of improperly admitted evidence cured by the fact that the accused sought to meet, destroy, or explain it by the introduction of rebutting evidence."

Although there are only four cases cited in support of this rule, the most recent of these, McLaughlin v. State, 109 Tex.Cr.R. 307, 4 S.W.2d 54 (1928), takes care to distinguish the rule that evidence of the same facts renders improperly admitted evidence harmless, from the rule that evidence seeking to "meet, destroy or explain" improperly admitted evidence does not render it harmless. In distinguishing the latter rule, the court in *McLaughlin,* supra, used the following language, which was quoted with approval in *Moulton,* supra:

"None of those cases, and in fact no others known to us, hold that the accused can admit the truth of the very testimony to which he is objecting and thereafter claim injury or hurt of a reversible character arising by virtue of the admission of the testimony originally objected to." 4 S.W.2d at page 55.

The distinction between the two rules should be clear from the discussion thus far: the improper admission of evidence over objection is rendered harmless by the unobjected-to admission of other evidence *of substantially the same facts*; whereas, the introduction of evidence seek-

ing *to meet, destroy, or explain* the erroneously admitted evidence does not render the error harmless. The rationale should be equally clear: if a fact be proven without objection, its erroneous proof over objection, although still error, is harmless error since the same facts have been proven without objection. On the other hand, presentation of *other* evidence which does *not* prove those facts erroneously admitted, but only tends to meet, destroy, or explain the erroneously admitted evidence, can hardly be considered to cure the error within the rationale of the first rule. Not falling within the harmless error rationale, if such rebuttal evidence is to be held to constitute a waiver of objection to the erroneously admitted evidence, some other reason must be advanced which would support such a new rule.

The true meaning of such new rule would be that a defendant against whom evidence has been admitted over objection could not attempt to rebut such evidence without waiving that objection. The absurdity of such a rule, when so expressed as to reveal its ultimate effect, is manifest. That the scope of such a rule would extend so far is clear: *use* of admitted evidence, including exhibits, includes within its meaning *use* in a hypothetical form as a predicate to rebuttal. Mere use would necessarily include all such rebuttal, and if use waives objection, how can rebuttal be attempted and objection preserved? Independent admission of evidence of the same facts without objection, it will be observed, is a concept wholly distinct from use, in that it is independent of the erroneous admission of evidence, whereas the *use* is dependent upon the prior evidence, inasmuch as it is an attempt to rebut it.

Having distinguished the rule by which the erroneous admission of evidence over objection is rendered harmless when substantially the same facts are subsequently shown without objection, from the rule by which a defendant may rebut evidence to which he has objected without thereby waiving his objection, there re-

mains the question of which rule controls this case. Without unduly lengthening this opinion, suffice it to say that the testimony of Dr. Young makes it abundantly clear that appellant was not offering the subject exhibits or offering evidence of substantially the same facts as those previously objected to, but, quite to the contrary, was making use of the exhibits as a predicate for rebutting their incriminating effect, seeking thereby to meet and destroy the force of the objected to evidence of the prosecution.

The other contentions raised by the State, in its motion for rehearing, have been considered and are found to be without merit.

The State's motion for rehearing is overruled.

DOUGLAS, J., concurs in the results.