**John Louis DIXON, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 07–95–0122–CR.**

Court of Appeals of Texas, Amarillo.

Oct. 24, 1995.

Rehearing Overruled Nov. 21, 1995.

versibly erred in 1) denying his requested charge on the legality of his initial temporary detention because the evidence raised a factual dispute whether the arresting officer had reasonable suspicion to stop him, and 2) the trial court's failure to instruct the jury on the legality of the stop was "calculated to injure Appellant's rights and was not harmless error." For reasons we later explain, we must affirm the judgment of the trial court.

The State's evidence consisted of the testimony of Lubbock Police Officer Richard Acree. He testified that on November 28, 1993, at about 1:00 a.m. or 1:15 a.m., he observed a vehicle "driving kind of erratic northbound on Quaker and about Fourth Street" and coming to a "screeching stop" at an intersection. He also averred that as the vehicle proceeded north on Quaker, he "paced"[1] the vehicle at eighty miles per hour. The posted speed limit on that part of the street was fifty miles per hour. The officer said that upon stopping the vehicle he asked for appellant's driver's license, then smelled a strong odor of alcohol emanating from appellant. After another officer performed various sobriety tests with appellant, he was arrested and taken to the county jail. Acree then conducted an inventory search of the automobile and found a loaded "38 caliber-type pistol" in the glove compartment.

Relevant to the issues before us, under direct examination appellant testified that for three years he had been employed by the Lubbock Avalanche Journal as a news carrier. In the normal course of that employment he would pick up his papers around 2:00 a.m. and finish his deliveries around 5:00 a.m., although he admitted on the morning in question, his wife had picked up the papers. He had approximately three hundred customers and to collect money for the papers, he would go to their homes. He said that at the time of this arrest, he had some $500 in cash and some checks which were the result of collections made "that day," without indicating how long it had been since the collections were made.

Bill Wischkaemper, Lubbock, for appellant.

William Sowder, District Attorney, and Michael West, Appellate Chief, Lubbock, for appellee.

Before DODSON, BOYD and QUINN, JJ.

BOYD, Justice.

Contending the trial court reversibly erred in refusing to give his requested charge concerning the legality of his initial temporary detention stop, appellant John Louis Dixon challenges his conviction of unlawfully carrying a weapon. The punishment assessed by the trial court was sixty days confinement in the Lubbock County Jail and a fine of $500.

In pursuing his challenge, appellant contends in two points that the trial court re-

---

1. Acree testified that he did not have radar equipment, but in order to stay in pace with appellant, he had to drive eighty miles per hour.

He said he "sometimes" took the pistol with him when he made the collections, although he admitted he had not put the pistol in the car "that day" and was not sure when he had put it in the car. He also admitted there was no question that at the time of his arrest, he had a pistol in the car and that he placed it there; however, he did not remember when he put it in the car, nor did he realize at the time of the incident that it was in the car.

Under cross-examination, he admitted that on the day in question he had not picked up the papers. His wife had done this for him. He also admitted that prior to his arrest, he had been "over at a friend's house" and had had "two shots" of liquor.

Under redirect examination, he averred that 1) he did not remember "laying down tread marks" when he stopped at the intersection, 2) he did not remember crossing the center line of the street, 3) he did not think he was going eighty miles an hour, and 4) his car was incapable of reaching eighty miles an hour on that particular street.

■ Article 38.23 of the Texas Code of Criminal Procedure provides that evidence obtained by an officer in violation of State or Federal laws or of either Constitution is inadmissible at trial, and if the legal evidence raises an issue whether the evidence was obtained in violation of the article, the jury must be so instructed.[2] Initially, we must decide if appellant's testimony that he did not "remember" laying down tread marks or crossing the center line of the street, nor did he "think" he was going eighty miles per hour, when coupled with his statement that his car was incapable of reaching eighty miles per hour on that particular street, was sufficient to raise a fact question for resolution by the jury.

On that question, the recent decision in *Reynolds v. State*, 848 S.W.2d 148 (Tex.Crim.

App.1993) is analogous and dispositive. In the *Reynolds* case, the arresting officer testified Reynolds told him "he did not think he was going 'that fast' and he was going to contest the speeding ticket." Reynolds' brother also testified he did not "think" Reynolds had been speeding and that Reynolds did not think he had been speeding. *Id.* at 148. In that regard, and in reversing the Court of Appeals, the *Reynolds* court explicated:

> While it is true that appellant's own perception of his speed is not dispositive, his perception does fairly raise an issue that he was not speeding in fact. If, in turn, the jurors believed that appellant was not in fact speeding, they would then be forced to conclude that the officer's testimony was either mistaken or incredible. And, although a conclusion that the officer was mistaken would not affect the legitimacy of his stopping appellant, a conclusion that he was lying would. Consequently, appellant's perception of his own speed was relevant, contrary to the opinion of the Court of Appeals, because it did "have a[ ] tendency to make the existence of a[ ] fact that is of consequence to a determination of the action [i.e., whether the officer was telling the truth] more probable ... than it would [have] be[en] without the evidence." Tex.R.Crim.Evid. 401.

*Id.* at 149.

In positing that appellant's testimony was sufficient to raise a fact question, we have not overlooked the State's contention, relying primarily upon *Caballero v. State*, 881 S.W.2d 745 (Tex.App.—Houston [14th Dist.] 1994, no pet.), that the testimony was insufficient to raise a fact question. However, in *Caballero*, the appellant's testimony was in explanation of his subjective reasons for leaving the scene of an accident. He did not contest the fact that he was involved in an accident. *Id.*

---

**2.** Tex.Code Crim.Proc.Ann. art. 38.23 (Vernon Supp.1995) provides:

    (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

    In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

at 749. As a result, the court correctly held there was no fact issue concerning the objective facts and circumstances of the accident upon which the police based their formulation of probable cause. To the contrary, in the case *sub judice,* appellant was contesting the very facts and circumstances relied upon by the police to justify his initial detention, and, thus, was entitled to the submission of an instruction on the question.

■ However, our task does not end with that decision. In this case, upon direct examination, appellant acknowledged "there is no question I had a pistol in the car." He admitted that although he had not put the pistol in the car "that day," and was not sure when he did so, he was the one who put the pistol in the car and it was in the car at the time of his arrest.

In view of that testimony, the State cites the rule stated in *Murphy v. State,* 640 S.W.2d 297 (Tex.Crim.App.1982) and cases of like ilk that "[W]hen an accused testifies on direct examination he possessed the fruits of the search, he normally waives any contention concerning the legality of the search." The State contends that appellant's admission during his direct examination that the pistol was his and was in his automobile waived his right to complain of the failure to give an instruction. *See id.* at 300.

The court in *Murphy* relied on the seminal case of *Nicholas v. State,* 502 S.W.2d 169 (Tex.Crim.App.1973) (on rehearing). In its statement of the general waiver rule, the *Nicholas* court explained the rationale for the rule as "if a fact be proven without objection, its erroneous proof over objection, although still error, is harmless error since the same facts have been proven without objection." *Id.* at 175. Even so, the *Nicholas* court recognized a corollary to the rule that "presentation of other evidence which does not prove those facts erroneously admitted but only tends to meet, destroy, or explain the erroneously admitted evidence, can hardly be considered to cure the error within the rationale of the first rule." *Id.* As is explained below, because appellant's testimony does not otherwise meet, explain or destroy his possession of the handgun, it does not fit into the corollary to the general waiver rule explained in the *Nicholas* case.

■ The elements of the offense of unlawfully carrying a weapon are 1) a person; 2) intentionally, knowingly, or recklessly; 3) carries on or about the person; 4) a handgun, illegal knife, or club. Tex.Penal Code Ann. § 46.02 (Vernon 1994). This statute is not applicable to the following persons: 1) a member of the armed forces, or a guard of a penal institution in the discharge of his or her duties; 2) the owner of the premises or a security guard employed by the owner; 3) a traveler; 4) someone engaged in hunting or some similar sport; 5) a security officer (on duty or traveling to and from his place of assignment, in uniform, and with weapon in plain view); or 6) a peace officer. *Id.; Anguiano v. State,* 706 S.W.2d 759, 762 (Tex. App.—San Antonio 1986, no pet.). Appellant does not fit into any of the exceptions to the statute nor does he contend he does so.

■ In addition to the statutory exceptions, there are other exceptions which have been crafted by case law. The only exception worthy of discussion was established in *Davis v. State,* 135 Tex.Crim. 659, 122 S.W.2d 635, 636 (1938) and *Bowles v. State,* 66 Tex.Crim. 550, 147 S.W. 869 (1912). As explicated by the *Davis* court, that exception provides that "a person may lawfully carry a pistol from his place of business to his home or from his home to his place of business, provided that the weapon is not habitually carried between those places and the purpose is a legitimate one." *Id.* at 636. The court also qualified the exception by quoting with approval a statement that "the route taken for the transportation must be a practical one, though not necessarily the shortest or most practical. It is essential also that the journey should proceed without undue delay or unnecessary or unreasonable deviation." *Id.; see also Boyett v. State,* 167 Tex.Crim. 195, 319 S.W.2d 106 (1958). Under this record, and under appellant's own testimony, he does not fit into this or any other judicially crafted exception to the statute.

This case exemplifies the Hobson's choice with which defense counsel is faced when he must present his client's testimony to raise a fact question under article 38.23, but the

testimony will admit the violation and waive an otherwise valid challenge to the validity of a search and seizure. Nevertheless, the waiver rule is well established and the exclusionary rule is circumscribed by its existence.

Because appellant's challenge to the legality of the stop leading to the discovery of the weapon was waived, no reversible error is shown. Accordingly, appellant's points are overruled and the judgment of the trial court is affirmed.

QUINN, Justice, concurring and dissenting.

I concur with that portion of the majority's opinion which holds that the conflicting evidence entitled the appellant to an instruction under article 38.23(a) of the Texas Code of Criminal Procedure. I am further unable to conclude beyond reasonable doubt that the error made no contribution to the conviction. *Tex.R.App.P.* 81(b)(2). To that extent, I respectfully disagree with the majority's determination that appellant waived his complaint.

First, as acknowledged by the majority, by voluntarily testifying to substantially the same facts concerning which he had previously lodged an objection, a defendant waives the objection. *McGlothlin v. State,* 896 S.W.2d 183, 189 n. 9 (Tex.Crim.App.1995); *Nicholas v. State,* 502 S.W.2d 169, 173–75 (Tex.Crim.App.1973) (on motion for rehearing). Yet, he cannot be said to have waived it if the testimony served to meet, destroy or explain the erroneously admitted evidence. *Id.*

Second, one is not criminally culpable for carrying a firearm if he does so while on "the legitimate business of protecting a large sum of money or [while] carrying the pistol to his place of business along a practical route, such carrying not being habitual." *Evers v. State,* 576 S.W.2d 46, 51 (Tex.Crim.App.1978); *accord Boyett v. State,* 319 S.W.2d 106, 107 (Tex.Crim.App.1958) (holding to the same effect).

Third, appellant testified that he worked as a news paper deliveryman. Part of his

duty, he continued, involved collecting money from his clients. Additionally, at the time of his arrest, he had on his person approximately $500 and various checks, apparently proceeds from his collection efforts. He took the weapon with him "*sometimes* ... when [he] ... collect[ed] a large amount of money...." (Emphasis supplied). The occasions on which he did that, however, were infrequent. They were normally restricted to those instances when he collected in Castle Garden. The latter apartment complex, he believed, was "a real bad area, and [he] would hate to get robbed there." Similarly, when asked by the prosecutor whether he feared robbery, appellant answered "yes."

Fourth, comparing the testimony to the rule espoused in *Evers* and *Boyett* illustrates that appellant spoke of carrying the weapon only to *explain* his reason for possessing it, that is, to defend against robbery while carrying or collecting large sums of money. Furthermore, the practice was purportedly infrequent. In effect, appellant sought to fit within the *Evers* and *Boyett* defense.

Fifth, the trial judge apparently deemed the foregoing testimony sufficient to raise a fact issue on the defense. It commented in the charge that appellant "introduced testimony and evidence to the effect that he did not commit the offense," and instructed the jury to acquit if it believed the evidence.[1] In submitting this instruction, it is reasonable to conclude that the trial court itself thought the testimony sufficient to raise an issue as to whether appellant asserted a "legitimate" purpose for carrying the weapon.

Given the defense, the evidence, and the trial court's apparent interpretation of that evidence, I cannot conclude that the appellant waived objection to the alleged inadmissibility of the firearm. He endeavored to "explain" his actions by referring to the weapon. Consequently, the judgment should be reversed and the cause remanded.

---

**1.** Admittedly, the trial judge did not expressly mention the elements *Evers* or *Boyett* in the charge. Yet, the similarity between appellant's

evidence and those elements permits one to reasonably infer that the instruction pertained to the rules discussed in the two cases.