Gordon Ray SIMMONDS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00143–CR.

Court of Appeals of Texas, Texarkana.

Submitted June 15, 2001.

Decided June 18, 2001.

David W. Barlow, Beaumont, for appellant.

John S. Klassen, Asst. Atty. Gen., Austin, Rodney D. Conerly, Asst. Crim. Dist. Atty., Beaumont, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Gordon Ray Simmonds appeals his conviction for possession of child pornography, enhanced by two prior felony convictions. The State alleged five separate counts of the offense and eight prior felony convictions. Simmonds filed a motion to suppress evidence, which the trial court overruled. Thereafter, the State elected

to proceed on count one of the indictment, and Simmonds pled guilty to that offense. Simmonds also pled true to two of the State's enhancement allegations. The trial court found Simmonds guilty, found the two enhancement allegations true, and sentenced him to fifty years in prison.

In the same proceeding, the trial court also found Simmonds guilty of two other possession of child pornography offenses, which the State alleged by separate indictment. The punishment range for each of those offenses was also enhanced by two prior felony convictions. The trial court sentenced Simmonds to fifty years in prison for each offense and ordered that the punishment for all offenses run concurrently. Simmonds has also filed appeals from the other two convictions, which we address by separate opinions.

■ Simmonds contends the trial court erred in overruling his motion to suppress. The State contends the evidence was admissible because it was in plain view. The United States Constitution protects individuals from unreasonable searches and seizures. U.S. CONST. amend IV. Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is per se unreasonable, unless it is made pursuant to a valid exception to the warrant requirement. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854, 858 (1973); *Reasor v. State,* 12 S.W.3d 813, 817 (Tex.Crim.App.2000). However, if during a lawful search the officer comes across evidence in plain view, the officer may seize the evidence. *Texas v. Brown,* 460 U.S. 730, 738–39, 103 S.Ct. 1535, 75 L.Ed.2d 502, 511 (1983); *Walter v. State,* 28 S.W.3d 538, 541 (Tex.Crim.App. 2000).

■ Such action does not implicate the privacy considerations involved in the Fourth Amendment's prohibition against unreasonable searches because there is no legitimate expectation of privacy in an object readily observable by officers from a lawful vantage point. *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334, 345 (1993). The warrantless seizure is deemed justified by balancing the impracticality and possible danger associated with obtaining a warrant and the slight intrusion on the objectives the Fourth Amendment was designed to promote. *See Dickerson,* 508 U.S. at 375, 113 S.Ct. 2130; *Brown,* 460 U.S. at 739, 103 S.Ct. 1535.

■ For a "plain view" seizure to be constitutionally permissible, two requirements must be met. First, the officer must have a right to be where he is. *Walter,* 28 S.W.3d at 541. Second, the incriminating nature of the evidence must be immediately apparent; that is, there must be probable cause to associate the item with criminal activity. *Id.*

At the suppression hearing, Officer Darren Washburn testified that he came to Simmonds' motel room to investigate a case involving the harboring of a runaway. Simmonds allowed him to enter. The motel room was set up like an apartment, with two bedrooms and a living area.

Washburn testified that he noticed an open pocketknife laying on the corner of a drafting table, which had a white surface. For his protection, he picked up the knife, closed it, and laid it back down on the table. Washburn then testified, "When I laid the knife back down, I saw a picture on plain white paper that was upside-down. When I saw it, it looked to me to be an image of a young child in a sexual pose. She appeared to be partially nude." He testified that the picture was laying next to the pocketknife and that he was about two feet from the picture. Wash-

burn testified that he moved a step closer to the picture and looked at it again from directly overhead. He testified that viewing the picture from this angle confirmed his suspicion that the picture was child pornography.

Washburn testified that he turned the picture over and asked Simmonds about it. He testified that Simmonds told him it was something someone had sent him via e-mail. He asked Simmonds if he had more pictures like that one in the room, and Simmonds told him he did not. Nevertheless, Washburn received Simmonds' permission to search the room, and Washburn found other pictures containing child pornography. Simmonds then voluntarily turned over some computer diskettes, which he said contained child pornography, and a white, three-ring binder containing other images depicting child pornography.

Simmonds disagreed with Washburn's account in several important details. First, Simmonds testified that the pocket-knife was not on the drafting table, but was on a filing cabinet a few feet away. Second, he testified that Washburn was several feet from the picture before he walked over to it. Third, he testified that Washburn immediately turned the picture over, rather than taking time to look at it from above. Finally, he disputed that the picture Washburn turned over was the same picture Washburn identified; rather, he testified that the picture Washburn turned over was another of the pictures Washburn later found in the room. Simmonds maintained that the picture Washburn actually turned over could not have been identified as child pornography from a face-down position.

At the hearing, the trial court viewed each face-down picture from the distances and angles suggested by Simmonds' and Washburn's testimonies. Thereafter, the trial court entered written findings of fact and conclusions of law in which it adopted Washburn's version of the events.

■ At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight of their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex.Crim.App. 1996). Therefore, an appellate court must view the record and draw all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). Furthermore, the appellate court must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.; Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990).

■ The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We are also to afford such deference to a trial court's ruling on the "application of law to fact questions" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* Questions not turning on credibility and demeanor may be reviewed by appellate courts de novo. *Id.*

In the present case, we must afford almost total deference to the trial court's determination that Washburn's version of the events was more credible. However, based on Washburn's testimony on cross-examination, Simmonds contends that the incriminating nature of the picture was not immediately apparent to Washburn before he turned it over. On cross-examination, Washburn testified:

Q. You weren't going to ask [Simmonds] if he knew anything about that photograph?

A. Not at that time, no, sir.

Q. Why not?

A. Because I hadn't flipped it over and saw for sure that it was, in fact, child pornography. I believed it to be child pornography, but I wasn't sure if it was child pornography.

Police officers do not have to know or be certain that an item in plain view is incriminating before seizing it; rather, they must have probable cause to believe the item is associated with criminal activity. *Brown*, 460 U.S. at 741–42, 103 S.Ct. 1535; *State v. Young*, 8 S.W.3d 695, 699–700 (Tex.App.—Fort Worth 1999, no pet.). Probable cause requires that the facts available to the officer would warrant a person of reasonable caution to believe that the item constitutes evidence of a crime. *Brown*, 460 U.S. at 742, 103 S.Ct. 1535; *Young*, 8 S.W.3d at 700.

An illustration of this principle is *Brown*, in which the officer seized an "opaque, green party balloon, knotted about one-half inch from the tip" that he witnessed the defendant remove from his pocket and let fall beside his leg. *Brown*, 460 U.S. at 733, 103 S.Ct. 1535. The balloon contained heroin. *Id.* at 735, 103 S.Ct. 1535. The Texas Court of Criminal Appeals held that the officer had to know that the balloon contained incriminatory evidence when he seized it. *Id.* (citing *Brown v. State*, 617 S.W.2d 196, 200 (Tex.Crim.App. [Panel Op.] 1981)). The United States Supreme Court disagreed, holding that probable cause, which the officer's experience and training provided, was all that was required. *Id.* at 742–43, 103 S.Ct. 1535.

In the present case, Washburn testified that when he put the knife down after closing it, he saw a face-down picture of what looked to him to be an image of a young child, partially nude, in a sexual pose. He believed the picture depicted child pornography. He testified that he moved to a different position and viewed the picture from overhead, which confirmed his suspicion that it was child pornography. Based on this testimony, we conclude that Washburn had probable cause to turn the picture over.

Simmonds analogizes the facts of this case to the facts of *Nicholas v. State*, 502 S.W.2d 169 (Tex.Crim.App.1973), and *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). In *Nicholas*, police arrested the defendant in his home after being informed that he was wanted on a fugitive warrant in New Mexico. *Nicholas*, 502 S.W.2d at 170. In the defendant's home, the officers observed several negatives, which depicted the defendant having intercourse with an eleven-year-old girl. *Id.* at 171. The Texas Court of Criminal Appeals held that the negatives were not properly seized because the officers had to pick up the negatives and hold them to the light before being able to determine their incriminating character. *Id.* at 171–72.

In *Hicks*, police investigated a shooting at the defendant's apartment. *Hicks*, 480 U.S. at 323, 107 S.Ct. 1149. In the process, they discovered stereo equipment that they suspected was stolen. *Id.* One officer recorded the serial numbers of the equipment, but had to move some of the equipment in order to do so. *Id.* The United States Supreme Court held that moving the stereo equipment to view the serial numbers constituted a warrantless search. *Id.* at 327–28, 107 S.Ct. 1149.

Neither *Nicholas* nor *Hicks* provides authority for Simmonds' position. In *Nicholas*, the officers could not tell what was on the negatives before holding them up to the light. In *Hicks*, the officers could not

determine whether the stereo equipment was stolen without moving it. Here, Washburn testified that he could see what looked like child pornography before he turned the picture over. Thus, no search occurred. The incriminating character of the picture provided him probable cause to seize it.

The judgment is affirmed.