IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2004 Session

## IN RE: DNG, SDP, et ux, JASP,  v. RLG and KSR

**Direct Appeal from the Juvenile Court for Davidson County**
**No. 2219-70452     Hon. Betty Adams Green, Judge**

**No. M2003-02810-COA-R3-PT – Filed October 13, 2004**

The Trial Court terminated the mother's parental rights to the four year old child.  On appeal, we Affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Kelli Barr Summers, Brentwood, Tennessee, for Appellant.

Paul A. Rutherford, Nashville, Tennessee, for Appellees.

**OPINION**

This is a parental termination case.  The birth mother, KSR ("mother"), is a drug addict who has been a user since the age of 14 or 15.  She is presently serving an 8 year sentence for dealing in cocaine.  The minor child DNG ("child") is now four years old.  Petitioners have been the foster parents and reared the child from birth with the exception of an 8 month period when the mother was on parole.

The mother was first incarcerated for dealing in cocaine in March of 1998.  She was paroled in September 1999, then reincarcerated on June 1, 2000 for using.  Two months later, the child was born on August 7, 2000.  The child left the hospital when two days old with the petitioners,

who have been the foster parents ever since.

The standard of review in termination of parental rights cases is *de novo* upon the record, with a presumption of correctness of the findings of fact by the Trial Court. *Tenn. Dept. Of Human Services v. Riley*, 689 S.W.2d 164 (Tenn. Ct. App. 1984). The issue to determine is whether the evidence made out a case of clear and convincing evidence in favor of terminating parental rights. *See, In re Drinnon*, 776 S.W.2d 96, 100 (Tenn. Ct. App. 1988). The clear and convincing evidence standard is something more than a preponderance of the evidence, but less than beyond a reasonable doubt standard. *O'Daniel v. Messier,* 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995). This heightened standard of proof is designed to prevent the unwarranted termination or interference with the biological parents' right to their children. *In re M.W.A.,* 908 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972). This right is not absolute, and parental rights may be terminated if the court finds by clear and convincing evidence that (1) grounds exist for termination as determined under the statute, and (2) it is in the best interests of the child to terminate the parent-child relationship. *Santosky v. Kramer*, 455 U.S. 745 (1982); *O'Daniel v. Messier.*

After trial, the Trial Court ruled that the birth mother had wilfully given up a second opportunity to rear her child by violating her parole, thereby exhibiting wanton disregard for the child's welfare, as defined in Tenn. Code Ann. § 36-1-102(1)(A)(iv). The Court further found the child's grandmother could have assumed care for the child, but had shown little involvement until the Petition was filed. The Court concluded the child had thrived in the continuity and stability of the petitioners' care, and that removing the child from petitioners' home would be detrimental to the child's best interest.

The grounds for termination of parental rights are set forth in Tenn. Code Ann. §36-1-113(g). The following are pertinent to this case:

> (g)  initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
>
> (1)  Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
>
> . . .
>
> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
>> (I) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further

abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

A termination of rights based upon proof by clear and convincing evidence of any one of the statutory factors will be affirmed on appeal. *In re C.W.W.,* 37 S.W.3d 456, 473 (Tenn. Ct. App. 2000).

The Trial Court found that the mother's conduct constituted a wanton disregard for the child's welfare, which is deemed abandonment for purposes of the foster care statute, and the termination of parental rights. *See,* Tenn. Code Ann. § 36-1-102(1)(A)(iv).

Our courts have consistently held that an incarcerated parent who has multiple drug offenses and wastes the opportunity to rehabilitate themselves by continuing to abuse drugs, resulting in revocation of their parole and reincarceration, constitutes abandonment of the child, and demonstrates a wanton disregard for the welfare of the child. *In re C.W.W. ,* 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000); *State v. J.S., et al.,* 2001 Tenn. App. Lexis 796 (Tenn. Ct. App. 2001); *G.M.C. et al v. A.V.I.,* 2000 WL 1195686 (Tenn. Ct. App. 2000); *State v. D.G.S.L.,* 2001 Tenn. App. Lexis 941 (Tenn. Ct. App. 2001); *State v. Grant*, 2002 Tenn. App. Lexis 158 (Tenn. Ct. App. 2002); *Dept. Of Children's Serv. V. Wiley*, 1999 WL 1068726 at *7 (Tenn. Ct. App. 1999). *Cf. In re C.T.S.*, 2004 WL 1838441 (Tenn. Ct. App., Aug. 16, 2004); (the Court found the fact that the mother ingested crack cocaine during pregnancy was conduct that itself established a wanton disregard for the welfare of the child.)

In this case the mother had the benefit of numerous treatment programs and interventions, a home to live in, the support of her mother and brother, employment, parole, a new boyfriend, and some limited contact with her older daughter. Despite all of these opportunities, she returned to her old lifestyle. She freely admitted in open court that it would be a lie to say she would never use again, and she could give no promises. She conceded that if she does relapse, it is not in the child's best interest to be with her. Her defense was that she was now dealing with things "differently". In parental rights matters, the court does not look to the protestations of affections and expressed intentions of the parent, but rather the parent's course of conduct. *Koivu v. Irwin*, 721 S.W.2d 803 (Tenn. Ct. App. 1986); *Fancher v. Mann*, 432 S.W.2d 63, 65 (Tenn. Ct. App. 1968).

The mother's behavior has severely diminished, if not nullified, her ability to discharge her proper role as a parent. The record establishes that she used crack cocaine during her

pregnancy, and by her own admission there is no guarantee that further rehabilitation will be any more successful than her past treatment programs. Considering the environment of addiction, relapse, and overall irresponsibility and disregard for the child's welfare, the Trial Court properly found by clear and convincing evidence that the mother's parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(3)(A).

The final issue is whether termination is in the best interest of the child. A non-exhaustive list of the factors to be weighed in this determination are set forth in Tenn. Code Ann. § 36-1-113(I). A minimum of seven of these factors are directly implicated in this case. Finding that termination of parental rights is in the best interest of the child has been justified with as few as four of the criteria set forth. *See G.M.C. et al v. A.V.I.*, 2000 WL 1195686 (Tenn. Ct. App. 2002).

Expecting a young child to wait years on incarcerated parents to remedy their problems is neither reasonable nor in the best interests of the child. *In re Shipley*, 1997 WL 596281 (Tenn. Ct. App. 1997); *State v. T.K.,* 2002 WL 1115730 (Tenn. Ct. App. 2002). Counsel argues that the mother's efforts to get into treatment and the realization of her need describes a loving and caring mother. However, the evidence is the child has never established a meaningful relationship with the birth mother or the grandmother. Petitioners have been the child's parents in reality from birth, and the child has known no other family. Moreover, stability is important to a child's well-being. *Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. Ct. App. 1981). When placing children, there is a preference to return them to their parents or place them with relatives over permanent placement through adoption. Tenn. Code. Ann. § 37-2-403 (1993); *State Dept. Of Human Serv. V. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990). Nevertheless, the best interest of the child remains the paramount and utmost consideration; it is the polestar, the alpha and omega in the court's determination. *Arnold v. Arnold*, 774 S.W.2d 613, 621 (Tenn. Ct. App. 1989). The grandmother has shown only the barest interest in the child and offered no concrete plan for rearing the child. The evidence in the record indicates that the grandmother's involvement with the grandchild has been minimal at best. Moreover, the grandmother did not demonstrate that it would be in the child's best interest to place the child with the grandmother. The proof establishes that the child has flourished as a part of the petitioners' family, and thrives under their care. The evidence is clear and convincing that it is in the best interest of the child that parental rights be terminated.

The cost of the appeal is assessed to the defendant, KSR.

_____
HERSCHEL PICKENS FRANKS, P.J.